## BECK *v.* PRUPIS ET AL.

No. 98–1480.   Argued November 3, 1999—Decided April 26, 2000

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, KENNEDY, GINSBURG, and BREYER, JJ., joined. STEVENS, J., filed a dissenting opinion, in which SOUTER, J., joined, *post*, p. 507.

*Jay Starkman* argued the cause for petitioner. With him on the briefs were *Jane W. Moscowitz* and *Joel S. Magolnick.*

*Michael M. Rosenbaum* argued the cause for respondents. With him on the brief for respondents Bellezza et al. were *Donald P. Jacobs* and *Richard M. DeAgazio. Frederick Mezey, pro se,* filed a brief as respondent.*

JUSTICE THOMAS delivered the opinion of the Court.

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. §§ 1961–1968 (1994 ed. and Supp. IV), creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U. S. C. § 1964(c) (1994 ed., Supp. IV). Subsection (d) of § 1962 in turn provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]." The question before us is whether a person injured by an overt act done in fur-

---

*Stephen M. Kohn, Michael D. Kohn,* and *David K. Colapinto* filed a brief for the National Whistleblower Center as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Tort Reform Association et al. by *Victor E. Schwartz, Mark A. Behrens,* and *Jeffrey L. Gabardi;* and for the Washington Legal Foundation et al. by *F. Joseph Warin, Daniel J. Popeo,* and *Paul D. Kamenar.*

therance of a RICO conspiracy has a cause of action under § 1964(c), even if the overt act is not an act of racketeering. We conclude that such a person does not have a cause of action under § 1964(c).

I

A

Congress enacted RICO as Title IX of the Organized Crime Control Act of 1970, Pub. L. 91–452, 84 Stat. 922, for the purpose of "seek[ing] the eradication of organized crime in the United States," id., at 923. Congress found that "organized crime in the United States [had become] a highly sophisticated, diversified, and widespread activity that annually drain[ed] billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption." Id., at 922. The result was to "weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens." Id., at 923. Finding the existing "sanctions and remedies available to the Government [to be] unnecessarily limited in scope and impact," Congress resolved to address the problem of organized crime "by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Ibid.

RICO attempts to accomplish these goals by providing severe criminal penalties for violations of § 1962, see § 1963, and also by means of a civil cause of action for any person "injured in his business or property by reason of a violation of section 1962," 18 U. S. C. § 1964(c) (1994 ed., Supp. IV).[1]

---

[1] RICO also authorizes the Government to bring civil actions to "prevent and restrain" violations of § 1962. 18 U. S. C. §§ 1964(a) and (b).

Section 1962, in turn, consists of four subsections: Subsection (a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce";[2] subsection (b) makes it "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce"; subsection (c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt"; and, finally, subsection (d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

## B

Petitioner, Robert A. Beck II, is a former president, CEO, director, and shareholder of Southeastern Insurance Group (SIG).[3]  Respondents, Ronald M. Prupis, Leonard Bellezza,

---

[2] Section 1961(1) contains an exhaustive list of acts of "racketeering," commonly referred to as "predicate acts." This list includes extortion, mail fraud, and wire fraud, which were among the 50 separate acts of racketeering alleged by petitioner. Section 1961(4) defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

[3] On review of the Court of Appeals' affirmance of summary judgment for respondents, we accept as true the evidence presented by petitioner. *Anderson* v. *Liberty Lobby, Inc.*, 477 U. S. 242, 255 (1986).

William Paulus, Jr., Ernest S. Sabato, Harry Olstein, Frederick C. Mezey, and Joseph S. Littenberg, are former senior officers and directors of SIG. Until 1990, when it declared bankruptcy, SIG was a Florida insurance holding company with three operating subsidiaries, each of which was engaged in the business of writing surety bonds for construction contractors.

Beginning in or around 1987, certain directors and officers of SIG, including respondents, began engaging in acts of racketeering. They created an entity called Construction Performance Corporation, which demanded fees from contractors in exchange for qualifying them for SIG surety bonds. Respondents also diverted corporate funds to personal uses and submitted false financial statements to regulators, shareholders, and creditors. During most of the time he was employed at SIG, petitioner was unaware of these activities. In early 1988, however, petitioner discovered respondents' unlawful conduct and contacted regulators concerning the financial statements. Respondents then orchestrated a scheme to remove petitioner from the company. They hired an insurance consultant to write a false report suggesting that petitioner had failed to perform his material duties. The day after this report was presented to the SIG board of directors, the board fired petitioner, relying on a clause in his contract providing for termination in the event of an "inability or substantial failure to perform [his] material duties." App. 104. Petitioner sued respondents, asserting, among other things, a civil cause of action under § 1964(c).[4] In particular, petitioner claimed that respondents used or invested income derived from a pattern of racketeering activity to establish and operate an enterprise, in violation of § 1962(a); acquired and maintained an interest in

---

[4] Petitioner's lawsuit was originally brought as a cross-claim in a shareholders' derivative suit filed against SIG officers and directors, including petitioner, in the United States District Court for the District of New Jersey. The New Jersey District Court severed petitioner's claims and transferred them to the Southern District of Florida.

and control of their enterprise through a pattern of racketeering activity, in violation of §1962(b); engaged in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of §1962(c); and, most importantly for present purposes, conspired to commit the aforementioned acts, in violation of §1962(d). With respect to this last claim, petitioner's theory was that his injury was proximately caused by an overt act—namely, the termination of his employment—done in furtherance of respondents' conspiracy, and that §1964(c) therefore provided a cause of action. Respondents filed a motion for summary judgment, arguing that employees who are terminated for refusing to participate in RICO activities, or who threaten to report RICO activities, do not have standing to sue under RICO for damages from their loss of employment. The District Court agreed and dismissed petitioner's RICO conspiracy claim. The Court of Appeals affirmed, holding that a cause of action under §1964(c) for a violation of §1962(d) is not available to a person injured by an overt act in furtherance of a RICO conspiracy unless the overt act is an act of racketeering. 162 F. 3d 1090, 1098 (CA11 1998). Since the overt act that allegedly caused petitioner's injury was not an act of racketeering, see §1961(1), it could not support a civil cause of action. The court held, "RICO was enacted with an express target—racketeering activity—and only those injuries that are proximately caused by racketeering activity should be actionable under the statute." Ibid.[5]

---

[5] Although petitioner alleged violations of §§1962(a), (b), and (c), the Court of Appeals concluded that he had presented no evidence of violations of subsections (a) and (b). It therefore treated each of petitioner's substantive RICO claims as alleging a violation of §1962(c). 162 F. 3d, at 1095, n. 8. The court held that petitioner did not present evidence regarding elements of his §1962(c) claims and therefore affirmed the District Court's order granting summary judgment for respondents with respect to those claims. Id., at 1095–1098. Petitioner does not challenge the Court of Appeals' conclusion with respect to his claims under §§1962(a)–(c).

We granted certiorari, 526 U. S. 1158 (1999), to resolve a conflict among the Courts of Appeals on the question whether a person injured by an overt act in furtherance of a conspiracy may assert a civil RICO conspiracy claim under § 1964(c) for a violation of § 1962(d) even if the overt act does not constitute "racketeering activity." The majority of the Circuits to consider this question have answered it in the negative. See, *e. g., Bowman* v. *Western Auto Supply Co.*, 985 F. 2d 383, 388 (CA8), cert. denied, 508 U. S. 957 (1993); *Miranda* v. *Ponce Fed. Bank*, 948 F. 2d 41, 48 (CA1 1991); *Reddy* v. *Litton Indus., Inc.*, 912 F. 2d 291, 294–295 (CA9 1990), cert. denied, 502 U. S. 921 (1991); *Hecht* v. *Commerce Clearing House, Inc.*, 897 F. 2d 21, 25 (CA2 1990). Other Circuits have allowed RICO conspiracy claims where the overt act was, as in the instant case, merely the termination of employment, and was not, therefore, racketeering activity. See, *e. g., Khurana* v. *Innovative Health Care Systems, Inc.*, 130 F. 3d 143, 153–154 (CA5 1997), vacated *sub nom. Teel* v. *Khurana*, 525 U. S. 979 (1998); *Schiffels* v. *Kemper Financial Services, Inc.*, 978 F. 2d 344, 348–349 (CA7 1992); *Shearin* v. *E. F. Hutton Group, Inc.*, 885 F. 2d 1162, 1168–1169 (CA3 1989).

## II

This case turns on the combined effect of two provisions of RICO that, read in conjunction, provide a civil cause of action for conspiracy. Section 1964(c) states that a cause of action is available to anyone "injured . . . by reason of a violation of section 1962." Section 1962(d) makes it unlawful for a person "to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." To determine what it means to be "injured . . . by reason of" a "conspir[acy]," we turn to the well-established common law of civil conspiracy. As we have said, when Congress uses language with a settled meaning at common law, Congress

"presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." *Morissette* v. *United States*, 342 U. S. 246, 263 (1952).

See *Molzof* v. *United States*, 502 U. S. 301, 307 (1992) (quoting *Morissette, supra,* at 263); *NLRB* v. *Amax Coal Co.,* 453 U. S. 322, 329 (1981).[6]

By the time of RICO's enactment in 1970, it was widely accepted that a plaintiff could bring suit for civil conspiracy only if he had been injured by an act that was itself tortious. See, *e. g.,* 4 Restatement (Second) of Torts § 876, Comment *b* (1977) ("The mere common plan, design or even express agreement is not enough for liability in itself, and there must be acts of a tortious character in carrying it into execution"); W. Prosser, Law of Torts § 46, p. 293 (4th ed. 1971) ("It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable" (footnotes omitted)); *Satin* v. *Satin,* 69 App. Div. 2d 761, 762, 414 N. Y. S. 2d 570 (1979) (Memorandum Decision) ("There is no tort of civil conspiracy in and of itself. There must first be pleaded specific wrongful acts which might con-

---

[6] Petitioner suggests that we should look to criminal, rather than civil, common-law principles to interpret the statute. We have turned to the common law of criminal conspiracy to define what constitutes a violation of § 1962(d), see *Salinas* v. *United States,* 522 U. S. 52, 63–65 (1997), a mere violation being all that is necessary for criminal liability. This case, however, does not present simply the question of what constitutes a violation of § 1962(d), but rather the meaning of a civil cause of action for private injury by reason of such a violation. In other words, our task is to interpret §§ 1964(c) and 1962(d) in conjunction, rather than § 1962(d) standing alone. The obvious source in the common law for the combined meaning of these provisions is the law of civil conspiracy.

stitute an independent tort"); *Cohen* v. *Bowdoin*, 288 A. 2d 106, 110 (Me. 1972) ("'[C]onspiracy' fails as the basis for the imposition of civil liability absent the *actual commission* of some *independently recognized tort;* and when such separate tort has been committed, it is *that tort,* and not the fact of combination, which is the foundation of the civil liability"); *Earp* v. *Detroit,* 16 Mich. App. 271, 275, 167 N. W. 2d 841, 845 (1969) ("Recovery may be had from parties on the theory of concerted action as long as the elements of the separate and actionable tort are properly proved"); *Mills* v. *Hansell,* 378 F. 2d 53 (CA5 1967) *(per curiam)* (affirming dismissal of conspiracy to defraud claim because no defendant committed an actionable tort); *J. & C. Ornamental Iron Co.* v. *Watkins,* 114 Ga. App. 688, 691, 152 S. E. 2d 613, 615 (1966) ("[The plaintiff] must allege all the elements of a cause of action for the tort the same as would be required if there were no allegation of a conspiracy"); *Lesperance* v. *North American Aviation, Inc.,* 217 Cal. App. 2d 336, 345, 31 Cal. Rptr. 873, 878 (1963) ("[C]onspiracy cannot be made the subject of a civil action unless something is done which without the conspiracy would give a right of action" (internal quotation marks omitted)); *Middlesex Concrete Products & Excavating Corp.* v. *Carteret Indus. Assn.,* 37 N. J. 507, 516, 181 A. 2d 774, 779 (1962) ("[A] conspiracy cannot be made the subject of a civil action unless something has been done which, absent the conspiracy, would give a right of action"); *Chapman* v. *Pollock,* 148 F. Supp. 769, 772 (WD Mo. 1957) (holding that a plaintiff who charged the defendants with "conspiring to perpetrate an unlawful purpose" could not recover because the defendants committed no unlawful act); *Olmsted, Inc.* v. *Maryland Casualty Co.,* 218 Iowa 997, 998, 253 N. W. 804 (1934) ("[A] conspiracy cannot be the subject of a civil action unless something is done pursuant to it which, without the conspiracy, would give a right of action"); *Adler* v. *Fenton,* 24 How. 407, 410 (1861) ("[T]he act must be tortious, and there must be consequent damage").

Consistent with this principle, it was sometimes said that a conspiracy claim was not an independent cause of action, but was only the mechanism for subjecting co-conspirators to liability when one of their member committed a tortious act. *Royster* v. *Baker*, 365 S. W. 2d 496, 499, 500 (Mo. 1963) ("[A]n alleged conspiracy by or agreement between the defendants is not of itself actionable. Some wrongful act to the plaintiff's damage must have been done by one or more of the defendants, and the fact of a conspiracy merely bears on the liability of the various defendants as joint tortfeasors"). See *Halberstam* v. *Welch*, 705 F. 2d 472, 479 (CADC 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort").[7]

---

[7] JUSTICE STEVENS quotes from some of the cases we have cited to suggest that the common law allowed recovery from harm caused by any overt act in furtherance of the conspiracy. See *post*, at 510–511, n. 5 (dissenting opinion). However, his quotations omit pertinent language. When read in context, it is clear that these passages refer to harm, not from any overt act, but only from overt acts that are themselves tortious. Compare *ibid.* with *Adler* v. *Fenton*, 24 How. 407, 410 (1861) ("[I]t must be shown that the defendants have done some wrong, that is, have violated some right of theirs . . . . [I]n these cases the act must be tortious"); *Royster* v. *Baker*, 365 S. W. 2d 496, 499 (Mo. 1963) ("Strictly speaking, there has been no distinct form of writ or action of conspiracy; but the action sounds in tort, and is of the nature of an action on the case upon the wrong done under the conspiracy alleged. The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy" (citations and internal quotation marks omitted)); *Lesperance* v. *North American Aviation, Inc.*, 217 Cal. App. 2d 336, 345, 31 Cal. Rptr. 873, 878 (1963) ("'It is well settled that a conspiracy cannot be made the subject of a civil action unless something is done which without the conspiracy would give a right of action'"); *Earp* v. *Detroit*, 16 Mich. App. 271, 275, 167 N. W. 2d 841, 845 (1969) ("There is no civil action for conspiracy alone. It must be coupled with the commission of acts which damaged the plaintiff. Recovery may be had from parties on the theory of concerted action as long as the elements of the separate and actionable tort are properly proved" (citation omitted)); *Halberstam* v. *Welch*, 705 F. 2d

The principle that a civil conspiracy plaintiff must claim injury from an act of a tortious character was so widely accepted at the time of RICO's adoption as to be incorporated in the common understanding of "civil conspiracy." See Ballentine's Law Dictionary 252 (3d ed. 1969) ("It is the civil wrong resulting in damage, and not the conspiracy which constitutes the cause of action"); Black's Law Dictionary 383 (4th ed. 1968) ("[W]here, in carrying out the design of the conspirators, overt acts are done causing *legal* damage, the person injured has a right of action" (emphasis added)). We presume, therefore, that when Congress established in RICO a civil cause of action for a person "injured . . . by reason of" a "conspir[acy]," it meant to adopt these well-established common-law civil conspiracy principles.

JUSTICE STEVENS does not challenge our view that Congress meant to incorporate common-law principles when it adopted RICO. Nor does he attempt to make an affirmative case from the common law for his reading of the statute by pointing to a case in which there was (a) an illegal agreement; (b) injury proximately caused to the plaintiff by a nontortious overt act in furtherance of the agreement; and (c) recovery by the plaintiff. See *post*, at 508. Instead, he argues only that courts, authoritative commentators, and even dictionaries repeatedly articulated a rule with no meaning or application.[8] We find this argument to be implausible

---

472, 479 (CADC 1983) (stating that civil conspiracy requires "an overt tortious act in furtherance of the agreement that causes injury. . . . Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort").

[8] We disagree, moreover, with JUSTICE STEVENS' interpretation of the grounds for decision in some of the cases we have cited. For example, JUSTICE STEVENS reads *Mills* v. *Hansell*, 378 F. 2d 53 (CA5 1967) *(per curiam)*, and *Chapman* v. *Pollock*, 148 F. Supp. 769, 772 (WD Mo. 1957), to deny recovery for conspiracy because the defendants had not entered into an unlawful agreement. See *post*, at 508–509. We think the opinions, and the language cited from these opinions by JUSTICE STEVENS,

and, accordingly, understand RICO to adopt the common-law principles we have cited. Interpreting the statute in a way that is most consistent with these principles, we conclude that injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO, see n. 7, *supra,* is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d). As at common law, a civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by *any* act in furtherance of a conspiracy that might have caused the plaintiff injury. Rather, consistency with the common law requires that a RICO conspiracy plaintiff allege injury from an act that is analogous to an "ac[t] of a tortious character," see 4 Restatement (Second) of Torts § 876, Comment *b,* meaning an act that is independ-

---

make clear that recovery was denied because the defendants had committed no actionable tort, regardless of whether they agreed to commit any such act. See *ibid.* Likewise, JUSTICE STEVENS reads *J. & C. Ornamental Iron Co.* v. *Watkins,* 114 Ga. App. 688, 691, 152 S. E. 2d 613, 615 (1966), to deny recovery because the plaintiff had suffered no injury. However, in that case, the plaintiff's conspiracy claim was predicated on several alleged torts including fraud, trespass, and malicious interference. *Ibid.* While the court held that the plaintiff could not recover for conspiracy to maliciously interfere because he had suffered no injury, the plaintiff's remaining conspiracy allegations were insufficient because the plaintiff did not allege "all the elements of a cause of action for the tort the same as would be required if there were no allegation of a conspiracy." *Ibid.* Further, JUSTICE STEVENS chides us for citing cases in which the court allowed recovery. But in two of these cases the court explicitly grounded its decision on the fact that the plaintiff had identified an actionable independent tort on which the conspiracy claim could be based. See *Cohen* v. *Bowdoin,* 288 A. 2d 106, 110 (Me. 1972) ("[I]f [the plaintiff's conspiracy claim] is to be upheld as stating a claim upon which relief can be granted, it must be on the ground that the complaint sufficiently alleges the actual commission of the separate and independent tort of defamation against the plaintiff"); *Middlesex Concrete Products & Excavating Corp.* v. *Carteret Indus. Assn.,* 37 N. J. 507, 516, 181 A. 2d 774, 779 (1962) (holding that the plaintiffs stated a claim for conspiracy because they alleged an actionable tort). In short, we think that there is ample evidence of the common-law rule we have cited.

ently wrongful under RICO. The specific type of act that is analogous to an act of a tortious character may depend on the underlying substantive violation the defendant is alleged to have committed.[9] However, respondents' alleged overt act in furtherance of their conspiracy is not independently wrongful under any substantive provision of the statute. Injury caused by such an act is not, therefore, sufficient to give rise to a cause of action under § 1964(c).[10]

Petitioner challenges this view of the statute under the longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous. He asserts that under our view of the statute, any person who had a claim for a violation of § 1962(d) would necessarily have a claim for a violation of § 1962(a), (b), or (c). However, contrary to petitioner's assertions, our interpretation of § 1962(d) does not render it mere surplusage. Under our interpretation, a plaintiff could, through a § 1964(c) suit for a violation of

---

[9] For example, most courts of appeals have adopted the so-called invest-ment injury rule, which requires that a plaintiff suing for a violation of § 1962(a) allege injury from the defendant's "use or invest[ment]" of income derived from racketeering activity, see § 1962(a). See, e. g., Crowe v. Henry, 43 F. 3d 198, 205 (CA5 1995); Vemco, Inc. v. Camardella, 23 F. 3d 129, 132 (CA6) (collecting cases), cert. denied, 513 U. S. 1017 (1994). Al-though we express no view on this issue, arguably a plaintiff suing for a violation of § 1962(d) based on an agreement to violate § 1962(a) is required to allege injury from the "use or invest[ment]" of illicit proceeds.

[10] Respondents argue that a § 1962(d) claim must be predicated on an actionable violation of §§ 1962(a)–(c). However, the merit of this view is a different (albeit related) issue from the one on which we granted certio-rari, namely, whether a plaintiff can bring a § 1962(d) claim for injury flow-ing from an overt act that is not an act of racketeering. Therefore, con-trary to JUSTICE STEVENS' suggestion, see post, at 511–512, we do not resolve whether a plaintiff suing under § 1964(c) for a RICO conspiracy must allege an actionable violation under §§ 1962(a)–(c), or whether it is sufficient for the plaintiff to allege an agreement to complete a substantive violation and the commission of at least one act of racketeering that caused him injury.

§ 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962.

### III

We conclude, therefore, that a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE SOUTER joins, dissenting.

For the purpose of decision, I assume—as I think the Court does—that petitioner has alleged an injury proximately caused by an overt act in furtherance of a conspiracy that violated 18 U. S. C. § 1962(d). In my judgment, the plain language of the Racketeer Influenced and Corrupt Organizations Act (RICO) makes it clear that petitioner therefore has a cause of action under § 1964(c), whether or not the overt act is a racketeering activity listed in § 1961(1). The common-law civil conspiracy cases relied upon by the Court prove nothing to the contrary.

A "conspiracy" is an illegal agreement. There is, of course, a difference between the question whether an agreement is illegal and the question whether an admittedly illegal agreement gives rise to a cause of action for damages. Section 1962(d), which makes RICO conspiracies unlawful, addresses the former question;[1] § 1964(c), which imposes civil

---

[1] Those who participate in an illegal agreement to violate the substantive provisions of § 1962(a), (b), or (c) have engaged in a conspiracy in violation of § 1962(d). See *Salinas v. United States,* 522 U. S. 52, 63–65 (1997). Although "[t]here is no requirement of some overt act" to violate § 1962(d), *id.,* at 63, that, of course, does not mean that an agreement alone gives rise to civil liability under § 1964(c).

liability, concerns the latter. Section 1964(c) requires a person to be "injured in his business or property" by a violation before bringing an action for damages. And because that kind of injury only results from some form of overt act in furtherance of the conspiracy, liability under § 1964(c) naturally requires injury via an overt act.[2] But there is nothing in either § 1962(d) or § 1964(c) requiring the overt act to be a racketeering activity as defined in § 1961(1).[3]

The Court's central premise is that common-law civil conspiracy cases support the notion that liability cannot be imposed unless the overt act that furthered the conspiracy and harmed the plaintiff was a *particular kind* of overt act, namely, an act of a tortious character. But the cases cited by the Court do not support that point. First, no case cited by the majority actually parallels the Court's premise. That is, no case involved a situation in which (a) there was an illegal agreement, (b) there was an injury to the plaintiff proximately caused by an overt act in furtherance of that agreement, but (c) there was a refusal to impose civil liability because the overt act was not itself tortious.

Of the dozen cases cited by the Court, *ante*, at 501–503, half of them rejected liability because they did not satisfy condition (a) above, *i. e.*, there was either no agreement or nothing illegal about the agreement that was made. See *Satin* v. *Satin*, 69 App. Div. 2d 761, 762, 414 N. Y. S. 2d 570 (1979) (Memorandum Decision) ("Here, the only such wrongful action is pleaded against [one defendant] alone. . . . In any event, it is doubtful that there could here be a conspiracy between this individual and his own corporation"); *Mills* v. *Hansell*, 378 F. 2d 53, 54 (CA5 1967) *(per curiam)* ("[W]e feel that the able trial judge correctly concluded that . . .

---

[2] Of course, under *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 268 (1992), the overt act must be the proximate cause of the plaintiff's injury.

[3] "[R]acketeering activity" is defined in § 1961(1) to include a slew of state and federal crimes such as murder, bribery, arson, and extortion.

there was no misconduct on the part of [the defendants]");
*Lespérance* v. *North American Aviation, Inc.*, 217 Cal. App.
2d 336, 346, 31 Cal. Rptr. 873, 878 (1963) ("[E]mployer . . .
had the right (so far as appears) to terminate [plaintiff's]
services without committing a civil wrong"); *Chapman* v.
*Pollock*, 148 F. Supp. 769, 772 (WD Mo. 1957) ("The fatal
defect in plaintiff's action for conspiracy is that the act com-
mitted by defendants . . . was lawful in its nature, . . . and
violated no right of plaintiff"); *Olmsted, Inc.* v. *Maryland
Casualty Co.*, 218 Iowa 997, 1003, 253 N. W. 804, 807 (1934)
("A conspiracy is not established by the record. There is
no direct evidence that such a conspiracy was formed. A
conspiracy cannot be inferred from the record, because noth-
ing was done by the alleged conspirators which was unlaw-
ful"); *Royster* v. *Baker*, 365 S. W. 2d 496, 500 (Mo. 1963)
("[T]he petition does no more than allege that the defendants
agreed, or if the term is preferred, conspired, to accomplish
lawful acts in a lawful manner").

Three more cases refused to impose liability because con-
dition (b) was missing; that is, because the plaintiff did not
actually suffer any harm. See *Earp* v. *Detroit*, 16 Mich.
App. 271, 280–282, 167 N. W. 2d 841, 847–848 (1969) (Plaintiff
waived any cause of action for conspiracy to invade his pri-
vacy by disclosing private information); *J. & C. Ornamental
Iron Co.* v. *Watkins*, 114 Ga. App. 688, 691–692, 152 S. E. 2d
613, 615 (1966) ("Plaintiff does not allege that it . . . was
injured in any way. . . . [T]he petition contains no allegations
of fact showing that plaintiff was injured in any way . . . .
Thus the petition fails to state a cause of action upon any
theory"); *Adler* v. *Fenton*, 24 How. 407, 411–413 (1861). The
remaining three cases found that the plaintiff *did* state a
cause of action and therefore the court did *not* refuse to im-
pose liability on that ground. See *Cohen* v. *Bowdoin*, 288
A. 2d 106, 110 (Me. 1972) ("We decide that the complaint
states a claim upon which relief can be granted"); *Middlesex
Concrete Products & Excavating Corp.* v. *Carteret Indus.*

*Assn.*, 37 N. J. 507, 516, 181 A. 2d 774, 780 (1962) ("[S]o much of defendants' motion as sought a dismissal of the complaint as being insufficient in law must fail," but sustaining defendants' unrelated privilege defense); *Halberstam* v. *Welch*, 705 F. 2d 472, 489 (CADC 1983). The cases cited, in short, simply do not do the work the Court would have them do.[4]

Furthermore, at least some of the cases cited by the Court speak generally of harm via any overt act, and not exclusively of tortious acts.[5] Indeed, some of the sources cited

---

[4] The Court suggests that three of the cases cited deny recovery because there was no actionable tort—and not, as I have suggested, because there was no illegal agreement or because there was no injury. See *ante*, at 504–505, n. 8. At best, the Court's reading only demonstrates that in these cases the question whether the harmful overt act was a tort, on the one hand, and the question whether there was any illegal agreement or harm, on the other hand, are questions of overlapping substance. To the extent that is true, however, the point does not support the Court's view. Rather, it only proves that the cases cited do not parse out elements (a), (b), and (c) as the Court suggests they do. Moreover, as I stated at the outset, both the Court and I assume that there has been an illegal conspiracy in this case. If the cases the Court cites show that there was no illegal agreement at all because there was no actionable tort, then the cases cited by the Court simply contradict the central premise of the present case, and are therefore inapposite.

[5] See *Earp* v. *Detroit*, 16 Mich. App. 271, 275, 167 N. W. 2d 841, 845 (1969) ("There is no civil action for conspiracy alone. . . . It must be coupled with the commission of acts which damaged the plaintiff"); *Lesperance* v. *North American Aviation, Inc.*, 217 Cal. App. 2d 336, 345, 31 Cal. Rptr. 873, 878 (1963) ("'It is the wrong done and the damage suffered pursuant to . . . the conspiracy itself . . . . [T]he complaint must state facts which show that a civil wrong was done'"); *Chapman* v. *Pollock*, 148 F. Supp. 769, 772 (WD Mo. 1957) ("There can be no recovery for the simple existence of a civil conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy. . . . Unless something is actually done by the conspirators pursuant to their combination . . . no civil action lies against anyone"); *Adler* v. *Fenton*, 24 How. 407, 410 (1861) ("[I]t must be shown that the defendants have done some wrong"); *Royster* v. *Baker*, 365 S. W. 2d 496, 499 (Mo. 1963) ("The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy"); *Halber-*

recognize that, at least in certain instances, the agreement *itself* can give rise to liability for civil conspiracy.[6]   And of the nine cases cited in which liability is rejected for failure to state a cause of action, four are the opinions of intermediate state courts and one is the three-page opinion of a Federal District Court—hardly strong evidence of the "widely accepted" premise on which the Court relies.   *Ante,* at 501. Thus, the cases cited by the Court do not at all place its conclusion on any firm footing.

Nevertheless, based on its understanding of the common law, the Court concludes that "a RICO conspiracy plaintiff [must] allege injury from an act that is analogous to an 'ac[t] of a tortious character.'"   *Ante,* at 505.   Even assuming that statement is correct, though, it is not at all clear to me why an overt act that "injure[s]" a person "in his business or property" (as § 1964(c) requires) would not be "analogous to an 'ac[t] of a tortious character'" simply because the overt act is not listed in § 1961(1).   Nor do I understand why the

---

*stam* v. *Welch,* 705 F. 2d 472, 487 (CADC 1983) ("[A] conspiracy requires: an agreement to do an unlawful act or a lawful act in an unlawful manner; an overt act in furtherance of the agreement by someone participating in it; and injury caused by the act").

[6] See *Cohen* v. *Bowdoin,* 288 A. 2d 106, 110, n. 4 (Me. 1972) ("We are aware that in particular extraordinary circumstances there has been recognized the existence of a separate self-sufficient and independent tort of 'conspiracy,' as a substantive basis of civil liability"); *Halberstam,* 705 F. 2d, at 477, n. 7; W. Prosser, Law of Torts § 46, p. 293 (4th ed. 1971) ("[I]t now seems generally agreed . . . that there are certain types of conduct, such as boycotts, in which the element of combination adds such a power of coercion, undue influence or restraint of trade, that it makes unlawful acts which one man alone might legitimately do.   It is perhaps pointless to debate whether in such a case the combination or conspiracy becomes itself the tort, or whether it merely gives a tortious character to the acts done in furtherance of it.   On either basis, it is the determining factor in liability").   See also *Snipes* v. *West Flagler Kennel Club, Inc.,* 105 So. 2d 164, 165–167, and n. 1 (Fla. 1958), where the court upheld liability *exclusively* on precisely that premise.

only qualifying "tortious act" must be "an act that is *independently wrongful under RICO."* *Ante,* at 505–506 (emphasis added).

And if one assumes further that the Court is correct to say that the only qualifying " 'ac[t] of a tortious character' " is "an act that is independently wrongful under RICO," the analogy does not actually support what the Court has held. The majority holds that § 1964(c) liability could be imposed if the overt acts injuring the plaintiff are among those racketeering activities listed in § 1961(1)—such as murder, bribery, arson, and extortion. Racketeering activities, however, are *not* "independently wrongful under RICO." They are, of course, independently wrongful under other provisions of state and federal criminal law, but RICO does not make racketeering activity *itself* wrongful under the Act. The only acts that are "independently wrongful under RICO" are violations of the provisions of § 1962. Thus, even accepting the Court's own analogy, if petitioner were harmed by predicate acts defined in § 1961(1), that still would not, by itself, give rise to a cause of action under § 1964(c). Only if those racketeering activities *also* constituted a violation of § 1962(a), (b), or (c) would petitioner be harmed by "an act that is independently wrongful under RICO." And, of course, if petitioner were already harmed by conduct covered by one of those provisions, he would hardly need to use § 1962(d)'s conspiracy provision to establish a cause of action.

\*　　\*　　\*

The plain language of RICO makes it clear that petitioner's civil cause of action under § 1964(c) for a violation of § 1962(d) does not require that he be injured in his business or property by any particular kind of overt act in furtherance of the conspiracy. The Court's recitation of the common law of civil conspiracy does not prove otherwise, and, indeed, contradicts its own holding.

For these reasons, I respectfully dissent.