

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-13-2001

# Smith v. Berg

Precedential or Non-Precedential:

Docket 00-2881

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Smith v. Berg" (2001). *2001 Decisions.* Paper 76.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/76

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 13, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2881

LEROY J. SMITH; GEORGETTE BECKON; MARCIA T.
SMITH, individually; VALISE C. MATTHEWS, individually,
on behalf of themselves and all others similarly situated

v.

JOHN G. BERG; COLUMBIA NATIONAL INCORPORA TED;
FIRST TOWN MORTGAGE CORPORATION;
COUNTRYWIDE CREDIT INDUSTRIES, INC., thr ough its
subsidiary, Countrywide Home Loans, Inc.; FIDELITY
NATIONAL FINANCIAL, through its subsidiary, Fidelity
National Title Insurance Company of Pennsylvania;
FIDELITY NATIONAL TITLE INSURANCE COMPANY
OF PENNSYLVANIA

       Columbia National Incorporated, First Town
       Mortgage Corporation; Countrywide Credit
       Industries, Inc.; Fidelity National Title
       Insurance Company of Pennsylvania,
       Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 99-CV-02133)
District Judge: Honorable Thomas N. O'Neill, Jr .

Argued March 12, 2001

Before: MANSMANN, BARRY and COWEN, Circuit Judges.

(Filed: April 13, 2001)

James N. Gross, Esquire (Argued)
Suite 1400
117 South 17th Street
Philadelphia, PA 19103

Dean B. Webb, Esquire
Suite 316
7904 NE 6th Avenue
Vancouver, WA 98665

 Counsel for Appellees

Elliott A. Kolodny, Esquire
Mellon, Webster & Mellon
87 North Broad Street
Doylestown, PA 18901

 Counsel for Appellant
Columbia National, Inc.

Natalie Finkelman, Esquire
Shepherd, Finkelman &
 Gaffigan, LLC
117 Gayley Street, Suite 200
Media, PA 19063

 Counsel for Appellant
First Town Mortgage Corp.

Burt M. Rublin, Esquire
Ballard Spahr Andrews &
 Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 1910-37599

 Counsel for Appellant
Countrywide Credit Industries, Inc.

2

Edward J. Hayes, Esquire
Lisa Carney Eldridge, Esquire

 (Argued)
Fox Rothschild O'Brien &
 Frankel, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103–3291

 Counsel for Appellant Fidelity
National Title Insurance Company
of Pennsylvania

OPINION OF THE COURT

MANSMANN, Circuit Judge.

This case presents two questions: First, in light of the Supreme Court's decision in Salinas v. United States, 552 U.S. 52 (1997), may liability under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO")

conspiracy statute codified at 18 U.S.C. S 1962(d) be limited to those who would, on successful completion of the scheme, have participated in the operation or management of a corrupt enterprise? Second, did the Supr eme Court's more recent decision in Beck v. Prupis , 529 U.S. 494

(2000), limit application of its holding in Salinas to criminal cases? Ruling against the Appellants on both issues, we will affirm the Orders of the District Court for the Eastern District of Pennsylvania. In doing so, we hold that any reading of United States v. Antar, 53 F .3d 568 (3d Cir. 1995), to the effect that conspiracy liability under section 1962(d) extends only to those who have conspir ed personally to operate or manage the corrupt enterprise, or otherwise suggesting that conspiracy liability is limited to

those also liable, on successful completion of the scheme, for a substantive violation under section 1962(c), is inconsistent with the broad application of general conspiracy law to section 1962(d) as set forth in Salinas.

3

I.

In this putative class action brought in the Eastern District of Pennsylvania, the Plaintiffs allege that Defendant, John G. Berg ("Berg"), acting through corporate entities, misled them into purchasing homes which they could not afford by fraudulently asserting that their homes would be entitled to various tax abatements and mortgage credit certificates.[1] The Plaintiffs further allege that the Defendant title insurance and lending companies[2] ("Appellants") conspired with Berg to defraud the Plaintiffs and realize the maximum profits from the sales and related title insurance and financings. Specifically, they allege that the Appellants conspired to further Berg's fraudulent enterprise by allowing Berg to assume many of their normal functions during settlements, recording false information on HUD-1 Settlement Statements, contacting prospective home buyers and encouraging them to make the purchases, communicating and negotiating with Berg rather than directly with the Plaintiffs, failing to make Truth-In-Lending Law disclosures, and granting mortgages for which they knew the Plaintiffs were unqualified. Accordingly, the Complaint asserts claims against the Appellants for participation in a RICO conspiracy with Berg in violation 18 U.S.C. S 1962(d).

The District Court first denied the Appellants' motion to dismiss these claims by its Memorandum Opinion of April 10, 2000, rejecting the Appellants' argument that the claims failed as a matter of law because the Appellants' conduct was not alleged to violate section 1962(c). [3] The

_____

1. Plaintiffs allege that in furtherance of his scheme, Berg used misleading mailings and radio and television advertisements. His fraudulent enterprise allegedly encompassed at least nine residential developments in Philadelphia from 1994 to 1997.
2. The additional defendants are Columbia National, Inc.; First Town Mortgage Corporation; Countrywide Credit Industries, Inc.; Fidelity National Financial; and Fidelity National Title Insurance Company of Pennsylvania.

3. The Plaintiffs do not allege that the Appellants committed any of the predicate acts or operated or managed, or agreed personally to operate or manage, the enterprise. Rather, the Plaintiffs only allege that the Appellants agreed with Berg to the violation of section 1962(c) and took certain overt acts in furtherance of that agreement. See April 10, 2000 Mem. Op. at 6.

4

District Court looked to the Supreme Court's decision in Salinas v. United States, 522 U.S. 52 (1997), and concluded that it implicitly overruled our prior holding in United States v. Antar, 53 F.3d 568 (3d Cir . 1995) and that, in accordance with Salinas, liability under section 1962(d) is met by "1) knowledge of the corrupt enterprise's activities and 2) agreement to facilitate those activities."4 The District Court concluded these elements were sufficiently pled.

Shortly thereafter, on April 26, 2000, the District Court requested briefing from the parties on the import of the Supreme Court's decision in Beck v. Prupis , 529 U.S. 494 (2000).5 The District Court expr essed concern that the Supreme Court's statement in Beck that"injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient to give rise to a cause of action under S 1964(c) for a violation of S1962(d)" might require dismissal of the conspiracy claims.6 On consideration, however, the District Court concluded that Beck did not affect the Plaintiffs' claims in this case because they, unlike Beck, allege direct injury as a result of the racketeering. See July 7, 2000 Mem. Op. at 5-6.

The District Court certified its decisions for immediate appeal pursuant to 28 U.S.C. S 1292(b) on July 7, 2000 and we granted the Appellants' Petition on September 26, 2000.

_____

4. April 10, 2000 Mem. Op. at 7 (citing Salinas, 522 U.S. at 66). Salinas involved a deputy who had knowledge of, and facilitated, a bribery scheme where an inmate paid off a sherif f for "contact visits" with his wife and girlfriend. The jury acquitted Salinas of liability under section 1962(c) because he had not committed any predicate acts, but convicted him of conspiracy because of his agreement to the scheme and his assistance therein.

5. The decision in Beck was handed down that very day.

6. Mr. Beck, the CEO of an insurance company, was terminated after discovering that certain of the company's dir ectors and officers were engaged in racketeering. The Supreme Court r ejected his theory that S 1964(c) provided a cause of action because his injury -- termination of employment -- was done in furtherance of the criminal conspiracy. See 529 U.S. 498-499.

II.

18 U.S.C. S 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or for eign commerce, to conduct or participate, dir ectly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. S 1962(d) provides: "It shall be unlawful to conspire to violate [S 1962(c)]."

As the District Court observed, the starting point for our analysis is the Supreme Court's decision in Reves v. Ernst & Young, 507 U.S. 170 (1993). In Reves, the Court held that to be liable under section 1962(c), a person must participate in the "operation or management" of the corrupt enterprise's affairs. Id. at 179. In Antar, we considered a line of cases holding that conspiracy liability does not require a showing that the defendant himself participated in the operation or management of the enterprise. W e considered these cases to be in tension with Reves, at least if read broadly. In an attempt to r esolve this perceived tension, we crafted a novel distinction "between, on the one hand, conspiring to operate or manage an enterprise, and, on the other hand, conspiring with someone who is operating or managing the enterprise." 53 F .3d at 581 (emphasis added). We concluded that liability under section 1962(d) would attach only in the first instance because only then is the defendant conspiring to do something for which he would, if successful, be liable under section 1962(c). Id.

This language in Antar was unnecessary to our holding, as our Opinion in this conspiracy withdrawal case concluded, in effect, that the defendant met either standard.7

_____

7. See 53 F.3d at 581. See also G. Robert Blakey & Kevin P. Roddy, Reflections on Reves v. Ernst & Young: Its Meaning and Impact on Substantive, Accessory, Aiding Abetting and Conspiracy Liability Under RICO, 33 Am. Crim. L. Rev. 1345, 1504 (Spec. Ed. 1996) (describing Antar as "unfortunately offer[ing] misguided dicta on the scope of RICO conspiracy").

In addition, the majority of our sister Courts of Appeals presented with the same question have not applied the "operation or management" test set forth in Reves to a RICO conspiracy. They have instead concluded that"Reves addressed only the extent of conduct or participation necessary to violate a substantive provision of the statute; the holding in that case did not address the principles of conspiracy law undergirding S 1962(d)."8

The question then is whether the language of Antar is dispositive, requiring dismissal of the conspiracy counts or whether, as the District Court concluded, it was vitiated by the Supreme Court's decision in Salinas. In Salinas, the defendant was charged with criminal violations of both section 1962(c) and section 1962(d) but convicted on the conspiracy charge alone. The Supreme Court resolved a conflict among the Courts of Appeals, finding–– as had the majority of our sister Courts of Appeals –– that a RICO conspiracy defendant need not himself commit or agr ee to

_____

8. United States v. Quintanilla, 2 F .3d 1469, 1484–85 (7th Cir. 1993), accord United States v. Starrett, 55 F.3d 1525, 1547 (11th Cir. 1995), cert. denied 517 U.S. 1111 (1996). See also United States v. Posada–Rios, 158 F.3d 832, 857 (5th Cir. 1998); Napoli v. United States, 45 F.3d 680, 683–84 (2d Cir. 1995). The Ninth Circuit has been the only other Circuit to suggest that the Reves test applies to a RICO conspiracy. See Neibel v. Trans World Assurance Co., 108 F .3d 1123, 1128 (9th Cir. 1997).

See also Blakey, Reflections on Reves, 33 Am. Crim. L. Rev. at 1513–14:

Reves is not a conspiracy decision; its holding focuses solely on what is required to violate S 1962(c) as a principle in the first degree.
Reves says nothing about the scope of S 1962(d). The issue in Antar, however, was how to read S 1962(d), not how to read Reves . . . .
Reading S 1962(d) was a question to be answer ed by reading [it] against the background of general conspiracy jurisprudence, as modified, if at all, by the text of RICO. . . . Antar's dicta that limits the scope of conspiracy under RICO making RICO conspiracy jurisprudence more narrow than general conspiracy jurisprudence . . . cannot be squared with basic techniques of statutory interpretation, much less with the purpose of RICO, which sought to broaden, not narrow the law, its plain text, its liberal construction clause, or well–established RICO jurisprudence and the developing post–Reves RICO conspiracy jurisprudence in other circuits.

commit predicate acts. In upholding the r esult in the Salinas case, the Supreme Court found that a violation of section 1962(c) was not a prerequisite to a violation of section 1962(d). Rather, the Court found that for purposes of conspiracy it "suffices that [defendant] adopt the goal of furthering or facilitating the criminal behavior ." 522 U.S. at 65.9 Moreover, the Supreme Court provided an extensive discussion indicating that RICO's conspiracy section–– section 1962(d) –- is to be interpreted in light of the common law of criminal conspiracy and that all that is necessary for such a conspiracy is that the conspirators share a common purpose.10

Thus, as the District Court observed, Salinas  makes "clear that S 1962(c) liability is not a pr erequisite to S 1962(d) liability." April 10, 2000 Mem. Op. at 7. The plain implication of the standard set forth in Salinas is that one who opts into or participates in a conspiracy is liable for the acts of his co-conspirators which violate section 1962(c) even if the defendant did not personally agr ee to do, or to conspire with respect to, any particular element.11 The

_____

9.  A conspirator must intend to further an endeavor which, if
       completed, would satisfy all of the elements of a substantive
       criminal offense, but it suffices that he adopt the goal of
furthering
       or facilitating the criminal endeavor. He may do so in any number
       of ways short of agreeing to undertake all of the acts necessary
for
       the crime's completion. One can be a conspirator by agreeing to
       facilitate only some of the acts leading to the substantive
offense.

522 U.S. at 65.

10. See id. at 64 ("If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators . . . so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators.").

11. The Appellants' principal response to the prospect of conspiracy liability in accordance with Salinas is that this definition of conspiracy would impose liability on those who "merely provide services". This phrase masks the fact that liability will arise only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity. If the Appellants' repeated characterization of themselves as innocent service providers is not belied by the evidence, they will incur no liability under section 1962(d).

8

Appellants' assertions to the contrary notwithstanding, the Supreme Court did not confine its discussion in Salinas to the element of predicate acts, in which event it might be "harmonized" with Antar's discussion of requirements as to levels of participation; rather, the Court expressed its analysis in broad terms, defining an interpretation of conspiracy liability directly at odds with Defendants' reading of Antar.12 We therefore hold that any reading of Antar suggesting a stricter standard of liability under section 1962(d) is inconsistent with the broad application of general conspiracy law set forth in Salinas. In accord with the general principles of criminal conspiracy law, a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise.

_____

12. The Appellants rely heavily on the Seventh Circuit's recent decision in Brouwer v. Raffensperger, 199 F.3d 961 (7th Cir. 2000), to assert that predicate acts and levels of participation should be analyzed separately in determining liability under section 1962(d). The Appellants urge us to hold that the broad standard set forth in Salinas is limited to the former element and that the stricter standard suggested in Antar governs with regard to levels of participation. Sali nas cannot be read so narrowly. See Posada–Rios, 158 F.3d at 857 (concluding"that the better-reasoned rule" is one which does not import the Reves test into a RICO conspiracy claim, "especially in light of the Supreme Court's recent decision in [Salinas]" which held "that S 1962(d) is governed by traditional conspiracy law"); Baker v. Stewart Title & Trust, 5 P.3d 249, 258 (Ct. App. Ariz. 2000) (observing that Salinas"supports the rule adopted by the majority of circuit courts that a person need not participate in the enterprise's operation or management to be liable for a RICO conspiracy"). Cf. Beck, 529 U.S. 501 n.6 (describing Salinas as defining "what constitutes a violation of S 1962(d)", rather than a violation of one sub–element of (d)).

We also note that, at least in the pr esent context, application of the separate framework proposed in Brouwer would not alter the result. At bottom, the Court in Brouwer held that a conspirator must simply agree to "knowingly facilitate the activities of the operators or managers to whom subsection (c) applies." 199 F.3d at 967. The allegations in the case before us are sufficient to meet this requirement.

III.

As noted above, Beck involved a CEO whose employment was terminated when he discovered that certain of his company's officers and directors were engaged in racketeering. In rejecting the theory that this injury -- one "caused by an overt act that [was] not an act of racketeering or otherwise wrongful under RICO" -- was "sufficient to give rise to a cause of action under S 1964(c) for a violation of S 1962(d)", the Supreme Court expressly refuted the assertion that this interpretation rendered the conspiracy statute "mere surplusage." 529 U.S. at 506-507. The Court specifically noted that, to the contrary, "a plaintiff could, through a S 1964(c) suit for violation of 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of S 1962." Id.

Furthermore, although the Appellants assert that Beck restricts Salinas to criminal cases, the only mention of Salinas appears at footnote 6, in which the Supreme Court recites that "[w]e have turned to the common law of criminal conspiracy to define what constitutes a violation of S 1962(d)". 529 U.S. 501 n.6. The reference to Salinas does not in any way repudiate its holding about what constitutes a conspiracy violation or indicate that the violation is different in a civil context. To the contrary, the footnote observes that Beck "does not present simply the question of what constitutes a violation of S 1962(d), but rather the meaning of a civil cause of action for private injury by reason of such a violation." Id. The plain import of this passage is that the question of what constitutes a violation of section 1962(d) continues to be defined under and governed by Salinas. It is a reaffirmance.13

The holding of Beck is that an injury sufficient to support a civil action under section 1964(c) must arise out of wrongful conduct proscribed by the substantive provisions of section 1962 (i.e., in the context of a section 1962(c)

_____

13. Although the Appellants attempt to characterize Beck as circumscribing liability, the decision actually limits the class of plaintiffs
whose injuries are cognizable; it does not in any way limit the class of defendants who are liable. Beck is simply a lack of standing case.

10

violation, the injury must arise out of the pr edicate acts).14 As the District Court correctly concluded, the Plaintiffs' claims in this case stem from injury dir ectly attributable to Berg's racketeering; they are the dir ect victims of substantive RICO violations.15 Thus the Appellants remain subject to liability under the reasoning enunciated by the Supreme Court in Beck. See July 7, 2000 Mem. Op. at 6 (noting that "civil conspiracy often is not considered a separate cause of action, but rather a `mechanism for subjecting co-conspirators to liability when one of their member committed a tortious act' ") (quoting Beck, 529 U.S. 503).

IV.

For the reasons set forth above, we will affirm the Orders of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

14. This holding addressed a split in the Courts of Appeals as to whether an employee discharged for discovering, or blowing the whistle on, a RICO scheme could bring suit under section 1962(d). The Courts of Appeals had consistently held that there was no direct liability under section 1962(c) because the injury suffer ed was not a result of the predicate acts underlying the RICO violation, but were divided as to liability under section 1962(d).

15. See System Management Inc. v. Loiselle , 112 F. Supp. 112, 119 (D. Mass. 2000) (rejecting defendant's argument for dismissal premised on Beck where plaintiffs were "direct victims" of the alleged fraud).

11