**UNPUBLISHED ORDER**

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 9, 2005
Decided July 21, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 04-3719

KEITH MCFARLAND,
      *Plaintiff-Appellant*,

    *v.*

PAUL WEIL, MARSHALL & STEVENS,
INC., CARL HOGAN, JR., *et al.*,
      *Defendants-Appellees*.

Appeal from the United States
District Court for the
Southern District of Illinois.

No. 03-CV-0433-MJR

Michael J. Reagan, *Judge*.

**O R D E R**

Keith McFarland sued his former employer, Marshall & Stevens, Inc. (M&S); the law firm of Bryan Cave LLP; a Bryan Cave attorney, Paul Weil; and three relatives of former Bryan Cave client Carl G. Hogan, Sr., alleging a conspiracy to violate various provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962 (c)-(d),1964(c); violation of the Hobbs Act, 18 U.S.C. § 1951; and two state law claims for tortious interference with contract and slander. The district court dismissed McFarland's federal claims with prejudice for failure to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6), and declined to exercise its supplemental jurisdiction over his state law claims, see 28 U.S.C. § 1367(c)(1), which

it dismissed without prejudice. McFarland appealed, and we now affirm.

We review *de novo* the dismissal of McFarland's complaint under Rule 12(b)(6), accepting the following factual allegations as true and drawing all reasonable inferences in favor of McFarland. See *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). On January 14, 2001, Carl G. Hogan, Sr., died. Acting as co-executors of his estate, Hogan's three sons, defendants Carl G. Hogan, Jr., Brian J. Hogan, and David Hogan, hired Weil, a Bryan Cave attorney, to prepare a federal estate tax return. According to McFarland, Hogan's sons and Weil conspired to generate fraudulent federal tax returns for Hogan's estate by providing false information about the estate's assets and accounting records to cooperating appraisal firms.

At some point after the alleged conspiracy began, Bryan Cave engaged M&S, a national valuation firm, for assistance in preparing Hogan's federal estate tax return. McFarland, who worked as the Appraisal Director for M&S's St. Louis office, was assigned the task of completing an appraisal report for the Hogan Real Estate Development Partnership, one of the Hogan estate's assets. McFarland alleges that upon submitting his draft appraisal report, the Hogans, Weil, and various senior M&S appraisers, under the influence of Bryan Cave attorneys, attempted to persuade him to alter his conclusions. When he refused to modify his report, they threatened to contact every law firm in the St. Louis area in an effort to prevent him from working as an appraiser in the future. On at least two occasions, McFarland contacted M&S's CEO to inform him about the fraud and to recommend that M&S withdraw from the project; both attempts proved futile. In his complaint, McFarland alleges that after M&S renegotiated its fee with Bryan Cave, M&S and the other defendants agreed that McFarland posed a risk to their scheme. At that point, M&S removed McFarland from the Hogan Estate working group; later, it terminated him. McFarland also claims that the defendants agreed to destroy his draft appraisal report; the final report reflected values based on the false information that McFarland refused to include.

Shortly after his termination, McFarland filed a one-count complaint in federal court alleging that the defendants conspired to violate RICO. See 18 U.S.C. § 1962(d). Defendants promptly filed motions to dismiss the complaint, and McFarland sought leave to amend, which the district court granted. On November 19, 2003, the district court held an off-the-record status conference during which it informed McFarland and his counsel of the heightened pleading requirements for RICO claims. The district court then granted McFarland leave to file a second amended complaint, which the defendants again moved to dismiss pursuant to Rule 12(b)(6). In an order dated September 21, 2004, the district court granted defendants' motions to dismiss McFarland's RICO claim. It reasoned that McFarland lacked standing under the Supreme Court's decision in *Beck v. Prupis*, 529 U.S. 494 (2000), because he was not

injured by an act of racketeering. (The district court's order granting Defendants' motions to dismiss does not specifically mention Weil. We were assured at oral argument, however, that this omission was an oversight by the district court and that the case against Weil is also over.)

The district court correctly concluded that McFarland's RICO claim is foreclosed by *Beck*. In *Beck*, under a set of facts indistinguishable in all material respects from this case, the Court held that "a civil conspiracy plaintiff cannot bring suit under RICO based on *any* act in furtherance of the conspiracy that might have caused the plaintiff injury," "[r]ather...a RICO conspiracy plaintiff [must] allege injury from...an act that is *independently unlawful* under RICO." 529 U.S. at 505-06 (emphasis added). McFarland attempts to distinguish *Beck* by arguing that, unlike Beck, he was the actual target of racketeering activity because the Defendants needed his work product, namely the appraisal report, to carry out their scheme; this argument, however, is irrelevant to the RICO standing analysis. In fact, *Beck* itself provides a stronger example of a plaintiff who was "specifically targeted" for unlawful activity, given that Beck alleged that the defendants in his case created an independent scheme for the sole purpose of firing him, which included hiring an independent insurance company to falsify reports against him and provide cause for his termination. The Supreme Court has made it clear that a RICO plaintiff has standing to recover only "to the extent that, he has been injured in his business or property by conduct constituting the violation," *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), which in this case would be the Defendants' alleged efforts to defraud the government by filing false tax documents.

There is no doubt that the injuries about which McFarland complains and the corresponding relief that he seeks (namely, payment for loss of income and past and future pecuniary losses), were proximately caused by his termination, which, wrongful or otherwise, is not an act of racketeering for purposes of RICO. See, *e.g.*, *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d. Cir. 1990) ("loss of employment ... for reporting or refusing to participate in an enterprise engaging a pattern of racketeering activity is not injury sufficient for standing"); *Nordine v. Textron, Inc.*, 819 F.2d 347, 349 (1st Cir. 1987) (noting that plaintiff's injury resulted only from defendant's decision to terminate him for reporting alleged RICO violations, and although "firing [the plaintiff] under these circumstances was wrong, ... it did not violate the RICO Act"); 18 U.S.C. § 1962 (a)-(c) (listing unlawful practices under RICO, none of which are employment termination or retaliation). See also *Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991, 1994 (2006) (holding that a plaintiff may sue under 18 U.S.C. § 1962(c), a different provision of RICO, "only if the alleged RICO violation was the proximate cause of the plaintiff's injury").

On appeal, McFarland also argues that the district court failed to consider his

claim against the Defendants for violation of the Hobbs Act. His second amended complaint, however, alleges no set of facts that constitute extortion under the Hobbs Act. See *Scheidler v. Nat'l Org. of Women*, 537 U.S. 393, 404 (2003) (The "extortion provision of the Hobbs Act ... require[s] not only the deprivation, but also the acquisition of property."). The only property at issue in this case is the valuation report. McFarland's complaint concedes that this report was not his own property, but instead was something that he created as an employee of M&S under the direction of Bryan Cave and for use by the Hogans. He has no right to pursue a claim that the defendants wrongfully acquired *their own* appraisal reports.

Although McFarland is unable to take advantage of the treble damages provisions for federal claims brought under RICO, we note in closing that his state law claims for tortious interference of contract and slander were dismissed without prejudice. He is of course at liberty to refile these claims in state court and see how they fare in that tribunal. We express no opinion on the latter point.

The judgment of the district court is **AFFIRMED**.