Jerry BURTON, Plaintiff,

v.

**KEN–CREST SERVICES, INC.,
et al., Defendants.**

**No. CIV. A. 00–CV–3205.**

United States District Court,
E.D. Pennsylvania.

Jan. 8, 2001.

Rosalind M. Plummer, The Law Office, P.C., Philadelphia, PA, for Jerry Burton.

Eric J. Rothschild, Pepper, Hamilton and Scheetz, Philadelphia, PA, for Ken–Crest Services, William J. Nolan, Executive Director, D. Glenn Irwin, Jim McFalls and Dale W. Beck, Residential Services.

Lisa M. Brody, Kleinbard, Bell & Brecker, Philadelphia, PA, for Lincoln Investment Planning, Inc.

Steven M. Felsenstein, Greenberg Traurig LLP, Philadelphia, PA, for The Rightime Fund, Inc. d/b/a Rightime Family of Funds.

Lawrence J. Bistany, White & Williams LLP, Philadelphia, PA, for Mark D. Turetsky.

Teresa N. Cavenagh, Duane, Morris & Heckscher LLP, Philadelphia, PA, for Lejeune Properties, Inc./Lejeune Group, Inc.

JOYNER, District Judge.

## *MEMORANDUM.*

This is a civil Racketeering Influenced and Corrupt Organization Act, ("RICO") case brought by Plaintiff Jerry Burton ("Plaintiff") against several Defendants, including Ken–Crest Services, Inc. ("Ken–Crest") and Ken–Crest employees William Nolan ("Nolan"), Jim McFalls ("McFalls"), and Dale Beck ("Beck"). Other named Defendants include Lincoln Investment Planning, Inc. ("Lincoln"); Lincoln employee Glenn Irwin ("Irwin"); the Rightime Fund, Inc. ("Rightime"); and Lejeune Properties, Inc., and Lejeune Group, Inc. (collectively, "Lejeune").[1] In his Complaint, Plaintiff alleges that he suffered several injuries stemming from Defendants' violations of 18 U.S.C. §§ 1961–1968 (West 1994, Supp. IV). Presently before the Court are five separate Motions to Dismiss filed by: (1) Ken–Crest, Nolan, McFalls, and Beck; (2) Lincoln and Irwin; (3) Rightime; (4) Lejeune; and (5) Turetsky. For the reasons below, we will grant all of the Motions and will dismiss Plaintiff's Complaint without prejudice.

## BACKGROUND.

Taken in the light most favorable to Plaintiff, the relevant facts are as follows. Ken–Crest is a non-profit organization that provides homes and various support services for mentally retarded individuals. In September 1992, Plaintiff began working for Ken–Crest as a Resident Advisor. Over the next several years, Plaintiff held several positions with Ken–Crest, eventually becoming a Project Director in 1993.

As a Project Director, Plaintiff was responsible for overseeing certain budgetary, licensing, and patient-care matters for several Ken–Crest homes. He remained in that position until 1997, at which point Ken–Crest terminated Plaintiff's employment. Thereafter, Plaintiff brought a still-pending employment discrimination case against Ken–Crest and later filed the instant civil RICO action.

Plaintiff's RICO claims arise from two alleged schemes perpetrated by Ken–Crest, certain Ken–Crest employees, and a host of peripheral actors who had business relationships with Ken–Crest. Among the employees implicated are Nolan, the Executive Director of Ken–Crest, and McFalls and Beck, two senior managers at Ken–Crest. The other involved parties include Lejeune, a real estate developer who purchased a parcel of Ken–Crest property; Lincoln, an investment advisor for Ken–Crest; Irwin, a broker employed by Lincoln; Rightime, a mutual fund distributed by Lincoln; and Turetsky, an outside attorney representing Ken–Crest. The first scheme, on which Counts I and II are based, involves misconduct in the administration of Ken–Crest's pension fund. The second scheme, on which Counts III and IV are based, involves improprieties surrounding the sale of a Ken–Crest property known as Rivercrest. Although Plaintiff has claimed in subsequent briefings that the two schemes are intertwined, no such relationship is alleged in, or can reasonably be inferred from, the Complaint.[2]

With respect to the pension fund scheme, Plaintiff alleges that Ken–Crest and Nolan conspired with Lincoln, Irwin,

---

1. Because Defendants make substantially the same argument in their respective Motions, we will analyze them together and refer to all Defendants collectively as "Defendants."

2. As described in further detail below, the Complaint sets forth two separate schemes, each of which gives rise to two of the four counts. In his Response to Defendants' Motions, however, Plaintiff raises what appears to be an entirely new theory that the two schemes are actually connected as part of a single, overarching scheme. (Pl.Resp. at 68–

69). This new theory is largely, if not completely, contradicted by the organization and substance of Plaintiff's Complaint. Perhaps with that in mind, Plaintiff also requests leave to amend his Complaint. (Pl. Resp. at 73–74). While we will address Plaintiff's request and the issues it implicates in Part V *infra*, for now, we will evaluate the substantive claims in the most logical grouping: first, those involving the pension fund scheme, and second, those involving the Rivercrest scheme.

and Rightime to mislead Ken–Crest employees about investment options available under the company's 403(b) pension plan. Plaintiff's arguments are predicated on Defendants' failure to disclose several conflicts-of-interest among Ken–Crest, Nolan, and Lincoln. Specifically, Plaintiff alleges that Lincoln received commissions from Rightime for the monies Lincoln directed to the Rightime fund. Lincoln presumably did not have this arrangement with other mutual funds it distributed, and therefore, had an incentive to route contributions to Rightime. Plaintiff also alleges that Nolan, in addition to being Ken–Crest's Executive Director, was a licensed broker for Lincoln who received commissions from Lincoln. Thus, Plaintiff's claim revolves around two related commission arrangements that were not disclosed to Ken–Crest employees: (1) Nolan induced Ken–Crest to select Lincoln as an advisor so that Nolan could earn commissions from Lincoln; and (2) Lincoln routed Ken–Crest employee contributions to Rightime, instead of other, higher earning mutual funds, so that Lincoln could receive commissions from Rightime. Plaintiff claims that, as a result of this misconduct, he was denied the opportunity to select his preferred investment vehicle and to realize a better rate of return than Rightime offered.

With respect to the Rivercrest scheme, Plaintiff alleges that Nolan, McFalls, Beck, Turetsky, and Lejeune conspired to sell Ken–Crest's Rivercrest property to Lejeune for a below-market price. In return, Nolan allegedly received a financial interest in Lejeune's efforts to develop the land into a golf course community. Although he does not allege a direct financial injury from this transaction, Plaintiff claims that he was terminated from his position with Ken–Crest after discovering and objecting to this scheme.

## DISCUSSION

### I. *Legal Standard*

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir.2000) (internal quotations omitted). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief can be granted. *See Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). Dismissal is warranted "if it is certain that no relief can be granted under any set of facts which could be proved." *Klein v. General Nutrition Cos., Inc.,* 186 F.3d 338, 342 (3d Cir.1999) (internal quotations omitted).

### II. *RICO*

RICO creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). There are four types of violations under § 1962, two of which are at issue in this case: Subsection (c) makes it unlawful to conduct the affairs of an enterprise through a pattern of racketeering activity; and subsection (d) makes it unlawful to conspire to violate any provision of subsections (a), (b), or (c). *See* 18 U.S.C. § 1962(c), (d); *see also* 18 U.S.C. § 1961(1) (listing acts of "racketeering"), (4) (defining "enterprise"). Here, Plaintiff alleges that Defendants, through perpetration of the pension fund and Rivercrest schemes, violated §§ 1962(c) and (d).

### III. *Counts I and II: the Pension Fund Scheme*

Defendants argue that Plaintiff's claims in Count I and II are barred by the Private Securities Litigation Reform Act ("PSLRA"), which eliminated conduct actionable as securities fraud from qualifying as a predicate act under RICO. We agree.

### A. *The PSLRA*

In 1995, Congress enacted the PSLRA. Pub.L. No. 104–67, 109 Stat. 737

(1995). Section 107 of the PSLRA amended 18 U.S.C. § 1964(c) by prohibiting "conduct that would have been actionable as fraud in the purchase or sale of securities" as a basis "to establish a violation of section 1962." § 1964(c). Significantly, the Committee Conference Report accompanying § 107 states that the amendment was not intended merely "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent a plaintiff from "plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Conf. Rep. No. 104–369, at 47. Based on this language, the United States Court of Appeals for the Third Circuit has rejected efforts to elude the amendment by pleading predicate acts that, while not securities fraud by name, are actionable as securities fraud and are "undertaken in connection with the purchase and sale of securities." *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 329–30 (3d Cir.1999); *see also In re Ikon Office Solutions, Inc. Secs. Litig.*, 86 F.Supp.2d 481, 486–87 (E.D.Pa.2000).

## B. *Plaintiff's Claims*

■ In Count I, Plaintiff alleges that Nolan, Ken–Crest, Irwin, Rightime, and Lincoln violated § 1962(c) by wrongly diverting Plaintiff's funds "by misrepresenting and concealing ... the relationship which defendants had to one another, by routing ... to low return investments in which defendants held a financial interest and by misrepresenting to and concealing from plaintiff his option to have his pension funds routed to higher return investments...." (Compl. at ¶ 35). More specifically, Plaintiff claims that Defendants failed to disclose that (1) Plaintiff had a right to remove his investment from Rightime; (2) Lincoln is affiliated with, and receives commissions from, Rightime; (3) Nolan had a brokerage relationship with Lincoln; and (4) certain Rightime Directors are "interested directors" under

the Investment Company Act of 1940. (*Id.* at ¶ 203–09). In Count II, Plaintiff alleges that Defendants conspired to violate § 1962(c), thereby violating § 1962(d). The gravamen of all of Plaintiff's claims is that he and other employees were deprived their legal right to select the investment portfolio of their choice and earned lower returns from Rightime than they would have in other investments.

In their Motions, Defendants maintain that, regardless of the merit of any of Plaintiff's charges in Counts I and II, all of Plaintiff's allegations are actionable as securities fraud, and therefore, are barred as RICO claims by the PSLRA and the clear holding of *Bald Eagle*. In Response, Plaintiff attempts to distinguish *Bald Eagle* on its facts and to argue that Defendants' violations amounted to "theft," not securities fraud. (Pl.Resp. at 63–66). Plaintiff also contends that, unlike in *Bald Eagle*, this case involves "separate and independent predicate acts, some of which are actionable solely under RICO and some of which are not." (Pl.Surreply at 6). Further, Plaintiff argues that this case is not about being misled about investment options, but rather Defendants' failure to inform Plaintiff about investments' availability. (*Id.* at 8, 10). Plaintiff characterizes Defendants' infractions as misrepresentations of "management activities" and an "unwillingness to honor his right of selection." (*Id.* at 7). In sum, Plaintiff asserts that he "has alleged ... that defendants committed mail fraud to commit pension fund embezzlement by representing in correspondence the operation and management of the Ken–Crest pension fund in order to induce plaintiff and others to become participants in the plan." (*Id.* at 9).

Plaintiff's circuitous arguments clearly fail. First, Plaintiff's attempt to recast the acts as "theft" instead of securities fraud is meritless on its face. While theft may have been the intended effect of Defendants' ploy, it is undisputed that fraud was

the means used to achieve that end. Second, Plaintiff's argument that some of the predicate acts are not actionable as securities fraud, and therefore, constitute separate and independent predicate acts for RICO purposes has been rejected by the Third Circuit. *See Bald Eagle*, 189 F.3d at 329–30 (holding that, even if some conduct may constitute wire, mail or bank fraud, that conduct cannot support a civil RICO claim if it was also "undertaken in connection with the purchase of a security."). Likewise, Plaintiff's factual distinctions between *Bald Eagle* and the instant case are unpersuasive. For example, the fact that *Bald Eagle* involved a Ponzi scheme and had other distinguishing aspects is irrelevant; regardless of the details of the fraud, there is no question that the whole of Plaintiff's allegations concern a fraudulent transaction of securities. Plaintiff cannot magically revive his claim by picking out discreet details of his allegations and then claiming that they are not actionable as securities fraud. Finally, Plaintiff's remaining arguments consist of tortured, semantic "distinctions" that do nothing to change the underlying reality of his case.[3]

Despite Plaintiff's efforts, it is obvious that the entire cause of action surrounding the pension fund scheme involves some type of securities fraud and that the alleged acts are actionable under securities fraud statutes. To find otherwise would be to elevate form over substance and allow the very "surgical presentation" of claims that *Bald Eagle* rejected.[4] *See id.* at 330. As a result, we find that Count I and II are barred by the PSLRA. Ac-cordingly, we will grant Defendants' Motions with respect to these claims.

### IV. Counts III and IV: the Rivercrest Scheme

Defendants next argue that Plaintiff's claims in Counts III and IV are barred by Third Circuit precedent and the recent United States Supreme Court decision *Beck v. Prupis*, 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). Again, we agree.

■■■ To prove a civil RICO claim, a plaintiff must prove an injury caused by the conduct constituting the violation. *See Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Several circuits, including the Third Circuit, have held that termination of employment is too remote an injury to be considered proximately caused by a violation of § 1962(c), and therefore, cannot support a claim under that subsection. *See Shearin v. E.F. Hutton Group*, 885 F.2d 1162, 1167–68 (3d Cir.1989) (dismissing § 1962(c) claim where only injury was termination of employment); *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 47 (1st Cir.1991) (termination of employment does not give plaintiff standing to bring § 1962(c) claim); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 294 (9th Cir.1990) (same); *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 154–55 (6th Cir.1990) (same). In addition, the Supreme Court recently held that a plaintiff whose only injury was being fired in furtherance of a RICO conspiracy does not have standing to bring a § 1964(c) claim predicated on a

---

3. Plaintiff goes to great lengths to distinguish, among other things, "failing to disclose" from "misleading"; processing securities from selling securities; and inducement through fraudulent mailings from "fraud." To the extent that such distinctions exist at all, they are distinctions without a difference in this context. Neither securities law, nor common sense, requires such hair-splitting. *Cf.* Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); SEC Rule 10b–5, 17 C.F.R. § 240.10b–5.

4. We recognize and follow the *Bald Eagle* Court's guidance that the proper inquiry is whether the conduct is "actionable as securities fraud" and not whether it was "connected to and dependent upon securities fraud." *Id.* at 330. Based on the facts of this case, we find that Defendants' conduct in the pension fund scheme is so closely connected with the purchase and sale of securities that it is actionable as securities fraud. *See id.; In re Ikon*, 86 F.Supp.2d at 486–87 & n. 8.

violation of § 1962(d). *Beck*, 120 S.Ct. at 1617.[5]

Despite Plaintiff's long and winding arguments in his Response and Surreply, he presents no injury stemming from the Rivercrest scheme other than his termination from his job.[6] This is insufficient to state a § 1964(c) claim predicated on a § 1962(c) or (d) violation. *See id.* at 1617; *Shearin*, 885 F.2d at 1167–68. Accordingly, we will grant Defendants' Motion with respect to Counts III and IV.

## V. *Motion to Amend and Remaining Issues*

Finally, we must address Plaintiff's request to amend his Complaint. As best the Court can ascertain, Plaintiff wishes to amend his Complaint to repackage this case as one involving a single, overarching scheme, as opposed to two distinct schemes. Initially, it appears that Plaintiff desires to do so to avoid the preclusive effect *Beck* has on his claims in Counts III and IV. (*See* Pl.Resp. at 68, 73). Plaintiff argues that his Complaint was based on pre-*Beck* precedent and that he should have the opportunity to "reconcile and recast the description" of his claims in view of the Supreme Court's holding.[7] In addition, Plaintiff asserts that his amendment would "add the material facts identified in the filings and exhibits accompanying plaintiff's responses...." (Pl.Surreply at 18). Presumably among these new "material facts" is Plaintiff's claim that he was unlawfully deprived of accrued vacation and sick leave by Defendants and that this deprivation constitutes an independent injury on which to premise Counts III and IV. (*Id.* at 14–18).

It appears unlikely that Plaintiff's presumed amendments will change the resolution of the instant Motion. However, given the preliminary stage of this case and the liberal application of Fed.R.Civ.P. 15, we will give Plaintiff every opportunity to present a proper claim. Therefore, although we will grant Defendants' Motions in their entirety, we will dismiss the Complaint without prejudice and grant Plaintiff leave to replead his claims if he so chooses.

## CONCLUSION

For the foregoing reasons, we will grant Defendants' Motions to Dismiss in their entirety and dismiss the Complaint without prejudice. An appropriate Order follows.

## *ORDER*

AND NOW, upon consideration of the Motions to Dismiss by Defendants Ken–Crest, Nolan, McFalls, and Beck (Document No. 15); Rightime (Document No. 16); Lincoln and Irwin (Document No. 17); Lejeune (Document No. 19); and Turetsky (Document No. 20), and Plaintiff's Responses thereto, it is hereby ORDERED that Defendants' Motions are GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff shall have *21 days* from the date of this Order to replead his Complaint, if he so chooses.

---

5. In doing so, the Supreme Court abrogated the Third Circuit's contrary view with respect to § 1962(d) as expressed in *Shearin*. In *Shearin*, the Third Circuit held that, although a § 1962(c) claim could *not* be premised solely on the injury of being fired, a § 1962(d) conspiracy claim could still be cognizable on that basis. Thus, the combined effect of *Beck* and *Shearin* is that termination from employment is an insufficient basis for either a § 1962(c) or § 1962(d) claim.

6. To the extent that Plaintiff may allege a new injury within his new case theory, we discuss those allegations in Part V *infra*.

7. Although Plaintiff implies that *Beck* was new law not available at the time of the filing of his Complaint, we note that *Beck* was decided nearly two months before this action was commenced.