

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2005

# Anderson v. Ayling

Precedential or Non-Precedential: Precedential

Docket No. 04-1180

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Anderson v. Ayling" (2005). *2005 Decisions.* Paper 1531.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1531

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-1180
_____

WILLIAM F. ANDERSON, JR.;
BARRY F. BRESLIN,
*Appellants*

v.

JACK AYLING; BRIAN KADA; PAUL VANDERWOUDE;
THOMAS H. KOHN; INTERNATIONAL BROTHERHOOD
OF TEAMSTERS; JOHN DOES 1-20; JAMES P. HOFFA;
MARKOWITZ & RICHMAN

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 02-cv-2352)
District Judge: Honorable Anita B. Brody
_____

Argued: December 13, 2004
Before: NYGAARD, ROSENN and BECKER, *Circuit Judges*

(Filed January 24, 2005)

JOHN F. INNELLI (ARGUED)
1818 Market Street, Suite 3620
Philadelphia, PA 19103
*Attorney for Appellants*

SAMUEL L. SPEAR (ARGUED)
Spear, Wilderman, Borish, Endy, Spear & Runckel
230 South Broad Street, Suite 1400
Philadelphia, PA 19102
*Attorney for Appellees Vanderwoude and Kada*

Robert M. Baptiste
Susan Boyle
Baptiste & Wilder, P.C.
1150 Connecticut Avenue, N.W., Suite 500
Washington, D.C. 20036
*Attorneys for Appellees Hoffa and International*
        *Brotherhood of Teamsters*

Marc L. Bogutz
William F. McDevitt
Christie, Pabarue, Mortensen and Young
1880 J.F.K. Boulevard, 10th Floor
Philadelphia, PA 19103
*Attorneys for Appellee Kohn*

———————————————

OPINION

———————————————

BECKER, *Circuit Judge.*

Plaintiffs William Anderson and Barry Breslin appeal from a final order of the District Court dismissing their civil RICO complaint for failure to state a claim upon which relief may be granted. Anderson and Breslin's extremely detailed twelve-page complaint alleges a convoluted conspiracy involving coercion, intimidation, and power struggles among competing factions in the International Brotherhood of Teamsters (IBT), arising from the rivalry between the late John Morris, former principal officer of Teamsters Local 115, and James Hoffa, the president of the IBT. Anderson and Breslin are Morris loyalists whose opposition to Hoffa allegedly cost them their jobs as special coating operators at Kurz-Hastings, a Local 115 Teamsters shop in Philadelphia. Defendants are Brian Kada and Paul Vanderwoude, Local 115 members allegedly involved in cigarette smuggling, drug sales, illegal gambling, and extortion; Jack Ayling, a member of Teamsters Local 107 who was also allegedly involved in Local 115's racketeering; James Hoffa, president of the IBT; Thomas

2

Kohn, an attorney who numbers the IBT among his clients; and the IBT itself.

The critical issue on appeal is the existence *vel non* of a proximate causal relationship between the alleged racketeering acts and the claimed injury, which is necessary to satisfy the RICO standing requirement. *See* 18 U.S.C. § 1964(c). The appeal thus requires us to explore some of the contours of that doctrine. Because we conclude that the proximate cause test is not met, we will affirm the order of the District Court dismissing the complaint.[1]

## I.

Because this is an appeal from a Rule 12(b)(6) dismissal, we treat all of the allegations in the complaint as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Malia v. Gen. Elec. Co.*, 23 F.3d 828, 830 (3d Cir. 1994). We describe in the margin those allegations that are most essential to the plaintiffs' RICO theory, which tell a seamy and confusing story of union corruption and power struggles.[2]

---

[1]We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2]On October 8, 1999, Local 115 representative and Morris loyalist "Jocko" Johnson visited Kurz-Hastings and discovered that many Local 115 members who were on the clock were not actually at work there. Johnson reported this anomaly to Morris, who initiated an investigation into Kurz-Hastings employees and management regarding possible illegal gambling that may have occurred while the missing workers were on the clock. On October 25, Kurz-Hastings fired seventeen employees who had been absent during Johnson's inspection. Two days later, Morris informed Anderson that two other Kurz-Hastings employees were retiring, and suggested that Anderson apply for one of the open positions. The next day, October 28, 1999, Anderson and Barry Breslin went to Kurz-Hastings to apply for jobs. They were hired as special coating operators on November 2.

On October 28, Ayling called Thomas Schatz, the IBT Ethical Practices Committee investigator, and told Schatz that Morris was placing two ex-convicts, Anderson and Michael Breslin, at Kurz-Hastings to replace some of the seventeen fired employees. A number of Ayling's statements were allegedly false, although plaintiffs do not deny that they were in fact ex-convicts. The next day, Kada also called Schatz,

3

As the detailed description suggests, plaintiffs allege that the defendants were involved in a protean racketeering conspiracy. The true gravamen of plaintiffs' allegations, however, is that two of the defendants, Ayling and Kada, committed wire fraud by placing

---

and told him that he had been assaulted during an interview with Morris. Plaintiffs state that this accusation was false. These telephone calls form the basis of plaintiffs' accusations of wire fraud in violation of 18 U.S.C. § 1343.

On November 15, 1999, Hoffa imposed an emergency trusteeship on Local 115, and removed Morris from his position as principal officer of the Local. This action was taken based on a wide-ranging investigation that included the recommendation of Schatz. Plaintiffs claim that this trusteeship was imposed based on falsehoods, including allegations that Johnson, Anderson, and Michael Breslin committed violence to enforce Morris's will. These alleged falsehoods were disseminated in a notice to members of Local 115, issued on November 15 over Hoffa's signature, which named Johnson, Anderson, and Michael Breslin as Morris loyalists with "criminal records and reputations for violence and intimidation." Plaintiffs contend that this notice was based on Ayling's and Kada's alleged wire fraud.

Plaintiffs were among those who picketed outside the union hall to protest the ouster of Morris. Breslin claims that he was assaulted by Vanderwoude while picketing on December 1, 1999. Plaintiffs claim that this was an attempt to intimidate Michael Breslin, the plaintiff's brother, who was a witness in an unrelated alleged conspiracy, and therefore constituted witness tampering in violation of 18 U.S.C. § 1512(b)(1).

On November 24, 1999, Kurz-Hastings general foreman Vic Franz fired Anderson and Breslin without giving any reason. Though it is not alleged in the complaint, plaintiffs now claim that Franz's deposition revealed that he fired them because he believed them to be dangerous and disruptive based on the November 15, 1999, notice to Local 115 members, which in turn was based on Ayling's and Kada's accusations of October 28-29.

On December 1, 1999, Anderson went to IBT Local 107 union hall for a hearing on a complaint against him. Before this hearing, Kohn allegedly asked Anderson to inform against John Morris in an unrelated investigation, and offered to "take care of" the complaint against Anderson, and help him get his job back, if he turned on Morris. Plaintiffs allege that this constituted extortion in violation of 18 U.S.C. § 1951(b)(2). Anderson refused to cooperate, and was fined and suspended from the union at the hearing later that day.

4

telephone calls to IBT investigator Thomas Schatz in which they made various false accusations against Morris, Anderson, and Breslin's brother Michael. Schatz included these accusations in a report to the IBT. According to plaintiffs, Hoffa relied on this report in imposing an emergency trusteeship on Local 115, and Kurz-Hastings relied on the trusteeship notice in terminating plaintiffs' employment. Plaintiffs allege that these acts of wire fraud, as well as other acts of intimidation and coercion, constitute predicate offenses under the Racketeer Influenced and Corrupt Organizations Acts, 18 U.S.C. § 1961-1968 (RICO).

At the outset, we judicially notice the fact that a panel of this Court has approved the IBT's decision to impose a trusteeship on Local 115. *See Morris v. Hoffa*, 361 F.3d 177 (3d Cir. 2004). We found there that Hoffa's investigation had discovered evidence that Morris and other members of his faction had committed violent attacks against union members (including Kada), and that Morris had been involved in "financial malpractice," nepotism, threats, assaults, extortion, and embezzlement. *Id*. at 183-84. The panel therefore had no difficulty in finding that the emergency trusteeship was justified.

Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The District Court found that, even if plaintiffs could show that defendants violated RICO, their allegations were insufficient to create standing for a civil RICO action, and therefore granted the motion to dismiss. Plaintiffs timely appealed.

## II.

The civil RICO statute allows "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c). Section 1962, in turn, provides in relevant part that:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or

5

collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c)-(d). The term "racketeering activity" is defined in 18 U.S.C. § 1961(1) to include a long list of state and federal crimes, among them the wire fraud alleged here.

## A.

The District Court dismissed the suit on the grounds that plaintiffs' allegations do not give rise to standing under § 1964(c), which requires a plaintiff to show (1) that he was injured (2) by reason of a violation of § 1962. Civil RICO "standing" is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 n.7 (3d Cir. 2000).

In *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992), the Supreme Court interpreted § 1964(c) to mean that a RICO plaintiff must show that defendant's RICO violation was not only a "but for" cause of his injury, but also that it was the proximate cause. Then, in *Beck v. Prupis*, 529 U.S. 494, 507 (2000), the Court held "that a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute." The Court held that a plaintiff needed to allege that he or she was injured by "an act that is independently wrongful under RICO," *id*. at 505-06, and not merely by a non-racketeering act in furtherance of a broader RICO conspiracy.

The plaintiff in *Beck* was the president of an insurance company, some of whose directors and officers were engaged in financial fraud. *Id*. at 498. On discovering this activity, Beck contacted regulators to attempt to correct the fraud. *Id*. The defendant conspirators then hired a consultant to write a false report suggesting that Beck was remiss in his duties, and the board of directors fired him upon receiving this report. *Id*. Beck alleged that the conspirators committed several violations of § 1962(a)-(c); moreover, he claimed that his termination was an overt act of a § 1962(d) conspiracy, and therefore gave rise to a § 1964(c) cause of action. The Supreme Court disagreed, finding that only a direct

§ 1962(a)-(c) act of racketeering could serve as a predicate for a civil RICO suit.

The District Court read *Beck*, and *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3d Cir. 1989), to stand for the proposition that "there is an insufficient nexus between the injuries caused by employment termination and a § 1962 violation to satisfy the proximate cause requirement of § 1964(c) standing."[3] We think that this is too broad a reading of those cases; it is possible that a predicate act of racketeering that *directly* caused a plaintiff to lose his job could create civil RICO standing.

Nonetheless, the District Court was surely correct to follow *Beck* as a factually analogous precedent. In *Beck*, as here, the plaintiff described a complex pattern of racketeering, but alleged only one act that directly harmed him: his termination. But whereas the defendants in *Beck* apparently controlled the board of directors that fired the plaintiff, and their falsified report was directly relied on by the board, defendants here had no connection to Kurz-Hastings, and their alleged falsehoods were filtered through the following long chain of intervening causes.

Kurz-Hastings did not rely directly on Ayling's or Kada's statements in firing Anderson and Breslin; in fact, Kada's statement did not mention the plaintiffs at all. Rather, Schatz, a non-party, used their statements as but one source for his own report. According to the pleadings, Hoffa then relied in part on that report in imposing an emergency trusteeship—a trusteeship which, as noted above, a panel of this Court has already found to have been proper, and which was based on significant evidence of violence and corruption. *See Morris v. Hoffa*, *supra*, 361 F.3d at 183-84. Kurz-Hastings then relied on the Notice of Trusteeship in firing the plaintiffs. This chain of causation is far more attenuated than that involved in *Beck*, where the Supreme Court found no proximate cause and therefore no RICO standing. We are therefore satisfied that the District Court was justified in relying on *Beck* to dismiss plaintiffs' complaint.

---

[3]In *Shearin*, we held that non-racketeering overt acts of a RICO conspiracy could not support a civil RICO suit under a § 1962(a)-(c) theory, but might support a suit under a § 1962(d) conspiracy theory. 885 F.3d at 1168-69. *Beck* abrogated the latter holding, finding that non-racketeering acts could not provide standing for any civil RICO suit.

B.

The proximate cause factors discussed in *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999), also undermine the plaintiffs' case. In *Steamfitters*, we found that antitrust standing principles have been incorporated into civil RICO standing doctrine, and adopted antitrust standing jurisprudence to more fully explore the RiCO proximate causation requirement. *See id.* at 921, 932. Citing *Associated Gen. Contractors, Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519 (1983) (*AGC*), we set out six factors to be considered in the antitrust standing analysis:

> (1) the causal connection between defendant's wrongdoing and plaintiff's harm; (2) the specific intent of defendant to harm plaintiff; (3) the nature of plaintiff's alleged injury . . . ; (4) "the directness or indirectness of the asserted injury"; (5) whether the "damages claim is . . . highly speculative"; and (6) "keeping the scope of complex antitrust trials within judicially manageable limits," i.e., "avoiding either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other."

*Steamfitters*, 171 F.3d at 924 (citing *AGC*, 459 U.S. at 537-38, 540, 542-44).

The *Steamfitters* factors also support the District Court's decision to dismiss this action: (1) the causal connection between wrongdoing and harm is attenuated, as several independent causes (Schatz's report, the imposition of the trusteeship, and Kurz-Hasting's own decision to fire the plaintiffs) intervened between defendants' alleged fraud and plaintiffs' termination; (2) there is little indication of specific intent to harm plaintiffs, as the alleged wire fraud was apparently intended to attack Morris, not the plaintiffs, and Kada's phone call did not even mention Anderson or Breslin; (3) the nature of the injury, job loss, is one that has been found not normally to create RICO standing in *Beck* and *Shearin*; (4) the injury is extremely indirect; (5) the damages claim is not speculative insofar as plaintiffs claim lost wages, but it would be

8

difficult to determine to what extent plaintiffs' job loss was due to the alleged RICO acts and to what extent it was due to intervening factors; and (6) while there is little danger of duplicate recovery, there is significant danger of duplicative *litigation*, as this lawsuit appears to be at least in part an attempt to relitigate the trusteeship dispute that this Court settled in *Morris v. Hoffa*, *supra*.

Thus we conclude that, under both the Supreme Court's RICO standing decision in *Beck* and our proximate cause analysis in *Steamfitters*, Anderson and Breslin have failed to allege facts sufficient to support a civil RICO cause of action with regard to the wire fraud that supposedly led to their termination from Kurz-Hastings.[4]

Although plaintiffs claim not only that they were injured in losing their jobs, but also that they were "injured by the corruption of their local," this corruption is not a cognizable injury that can create RICO standing. *Maio*, 221 F.3d at 483 ("[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." (quoting *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). Plaintiffs point to no concrete losses, financial or otherwise, stemming from the alleged corruption of their local.

## III.

Plaintiffs also argue that the District Court erred in dismissing their suit with prejudice, but rather should have allowed them leave to amend their complaint. We review this decision for abuse of discretion. *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990). Plaintiffs concede that they should not have been allowed to amend if amendment would be futile. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) ("We have made it clear that an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"). They argue, however, that they could have amended

---

[4]Anderson and Breslin also accuse the defendants of other acts of racketeering, to wit, attempted extortion in violation of 18 U.S.C. § 1951, and attempted witness tampering in violation of 18 U.S.C. § 1512(b). These acts cannot, however, have proximately caused their job loss, for the simple reason that they occurred a week *after* plaintiffs were terminated from Kurz-Hastings.

the complaint to "articulate the nexus between the wire fraud and decision by Kurz-Hastings to terminate plaintiffs," by adding allegations, based on the deposition of Vic Franz, a Kurz-Hastings foreman, that Anderson and Breslin were fired only because of the false statements about them, allegedly supplied by Kada's and Ayling's telephone calls, which were contained in the notice of trusteeship.

Such an amendment could not have saved Anderson and Breslin's complaint. As we noted above, *see supra* Part II, the chain of causation was simply too attenuated to create civil RICO standing. Even assuming that Kurz-Hastings did take Kada's and Ayling's accusations into account in deciding to fire the plaintiffs, there are still at least three independent decisions—by Schatz, a non-party; by Hoffa, whose decision has been ratified by this Court, *see Morris v. Hoffa*, *supra*; and by Kurz-Hastings, a non-party—that intervened between the alleged wire fraud and plaintiffs' ultimate injury. *Beck* and *Steamfitters* make it clear that plaintiffs' proposed amendment would not be enough to demonstrate that the racketeering acts proximately caused their injury, and thereby to create civil RICO standing. An amendment would therefore have been futile, and the District Court did not abuse its discretion in denying leave to amend.

The Order of the District Court dismissing the complaint will be affirmed.