NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1318
_____

TALBOT BARNARD; DONALD B. BIGGERSTAFF; SUSAN BIGGERSTAFF;
DAVID BOON; GREG BOSER; DEB BOSER; THOMAS BOVET, COL.; MARK
HENDRYCH; ZHENGXU HE FANG; YING FANG; BIN LEE; THOMAS E.
MARTIN; MIDDLEBAR MONASTERY, NON-PROFIT; JERSEY NIETUBYC;
KATHERINE PERINO; BRIAN D. SPENCER; STEPHEN S. SPENCER; CHARLES J.
TURK, KNOWN COLLECTIVELY AS "THE SPENCER COMMITTEE",

Appellants,

v.

VERIZON COMMUNICATIONS, INC.; J.P. MORGAN CHASE BANK, N.A.,
INDIVIDUALLY AND AS AGENT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 10-cv-1304)
District Judge: Hon. Gene E.K. Pratter
_____

Submitted Under Third Circuit LAR 34.1(a)
November 9, 2011

Before: SCIRICA, SMITH, and JORDAN, *Circuit Judges*.

(Filed: November 14, 2011)
_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Former shareholders of the now-bankrupt corporation Idearc, Inc. ("Appellants") appeal an order of the United States District Court for the Eastern District of Pennsylvania granting separate motions to dismiss filed by Verizon Communications, Inc. ("Verizon") and J.P. Morgan Chase Bank, N.A. ("JPMC") (collectively, "Appellees").  Appellants argue that the District Court improperly dismissed their complaint and erroneously declined to consider Appellants' then-pending motion for summary judgment before doing so.  For the reasons that follow, we will affirm.[1]

## I.      Background

### A.      *Idearc's Bankruptcy*

Appellants are former investors in Idearc, Inc. ("Idearc"), a corporation that was formed as part of a 2006 spin-off transaction whereby Verizon divested its domestic print and Internet "Yellow Pages" directory publishing operation and formed Idearc for the purpose of continuing that operation as a separate business.  In connection with the spin-off, J.P. Morgan Ventures Corporation and Bear, Stearns & Company agreed to exchange approximately $7 billion in Verizon debt for an equal amount of Idearc debt.  JPMC served as an administrative agent for the debt exchange.  In addition to that $7 billion in debt, Idearc also incurred $2 billion in debt to Verizon as partial consideration for the

---

[1] Appellants have also filed several motions which amount to motions for summary reversal, as well as a motion "requesting judicial notice of res adjudicata decision affirming justiciability of post-bankruptcy security holder claims."  (Appellants' Oct. 17, 2011 Motion Requesting Judicial Notice.)  These motions lack merit and warrant no further discussion, as we hope will be plain from the discussion which follows.

2

Yellow Pages business and the right to be the exclusive and official publisher of Verizon print directories.

On March 31, 2009, less than three years after its spin-off from Verizon, Idearc filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Texas. Appellants, who held shares of Idearc when the Chapter 11 petition was filed, actively participated in the bankruptcy proceedings. Among other things, Appellants sought to have Idearc's bankruptcy proceedings dismissed on the ground that the Idearc bankruptcy was part of a scheme orchestrated by Verizon for the purpose of reducing its liabilities while leaving Idearc's shareholders with crushing debt.

The Bankruptcy Court denied Appellants' motion to dismiss and ultimately confirmed Idearc's Chapter 11 reorganization plan (the "Plan"), over Appellants' objections. Under the Plan, Idearc cancelled its existing common stock – including shares owned by Appellants – and issued new common stock to its secured and unsecured creditors. In addition, the Plan established a litigation trust to investigate and pursue any claims for the benefit of Idearc's bankruptcy estate and creditors.[2] Following the Plan's confirmation, Appellants filed a notice of appeal[3] and motions that, if granted by the

_____

[2] The litigation trustee has already filed one such action against Verizon and other defendants in the United States District Court for the Northern District of Texas. *See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, No. 10-1842 (N.D. Tex.). That case is currently pending.

[3] The United States District Court for the Northern District of Texas dismissed Appellants' appeal from the Bankruptcy Court's final judgment as equitably moot. Appellants then appealed that decision to the United States Court of Appeals for the Fifth Circuit, which affirmed the district court's order on October 17, 2011. *See Spencer ad*

3

Bankruptcy Court, would have rescinded the confirmation order or stayed the Plan's implementation. Those motions were denied by the Bankruptcy Court on March 5, 2010.

B. *Proceedings in the District Court*

Appellants filed this action on March 25, 2010 and subsequently amended their complaint twice, asserting claims for securities fraud, insider trading, common law fraud, conversion, a *Bivens* claim for violation of federal constitutional rights, and a claim alleging violation of § 206 of the Communications Act, 47 U.S.C. § 206. Verizon and JPMC each filed a motion to dismiss Appellants' second amended complaint. Appellants opposed those motions and also filed a pre-discovery motion for summary judgment.

After Appellants declined the District Court's invitation to file a third amended complaint, the Court granted Appellees' motions and dismissed the second amended complaint in its entirety. The Court held that the securities fraud, insider trading, and common law fraud claims did not satisfy the applicable pleading standard; it rejected Appellants' conversion claim as a collateral attack on the Idearc bankruptcy; and it concluded that there was no legal basis for a claim under *Bivens* or the Communications Act. Finding that a curative amendment would be futile, inasmuch as Appellants had already filed two amended complaints and still failed to present a cognizable claim for relief, the District Court dismissed the second amended complaint with prejudice. In light of its ruling on the motions to dismiss, the Court denied Appellants' motion for summary judgment.

---

*hoc Equity Comm. v. Idearc, Inc. (In re Idearc, Inc.)*, No. 10-10858, 2011 WL 4910019, at *4 (5th Cir. Oct. 17, 2011).

4

Appellants timely appealed.

## II. Discussion[4]

Appellants argue that the District Court erred in dismissing their securities fraud, common law fraud, conversion, and Communications Act claims,[5] and in failing to consider their motion for summary judgment before doing so. We address each of those contentions in turn.

### A. *Securities Fraud*

Appellants allege that Verizon and JPMC violated section 10(b) of the Securities and Exchange Act, as well as Securities and Exchange Commission Rule 10b-5, by "planning, orchestrating and accomplishing the spin, listing and public distribution of the Verizon subsidiary, Idearc, that was defined 'insolvent' ... when issued ... and ... failing to

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a district court's dismissal for failure to state a claim is plenary. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). "'Reviewing such an order, we accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant.'" *Id.* (quoting *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008)). Our task in doing so is to determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). However, while our review of an order dismissing a complaint is plenary, the decision to do so with prejudice is reviewed for abuse of discretion. *Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005).

[5] To limit the issues on appeal, Appellants have "agree[d] to the dismissal" of the insider trading and *Bivens* claims and have acknowledged that their assertion that they have a "Shareholder Direct Right of Action" is "not a separate cause of action, but is an allegation that the Decree in Bankruptcy affirmatively authorized . . . third-party direct action lawsuits against Verizon, including shareholder suits." (Appellants' Opening Br. at 3.)

disclose in applicable registration statements their true intent, which was ... to simply off-load debt, and transfer ownership of debt directly . . . from Verizon to the banks." (J.A. at 58.)  In particular, Appellants aver that Verizon and JPMC intentionally misrepresented Idearc's solvency by creating an "'illusion' of permanence" through the exclusive publishing agreement Verizon and Idearc entered into, through paying an initial dividend, and through withholding their "affirmative intent to permit a near term recapitalization." (*Id.* (emphasis omitted).)  This, according to Appellants, created a "fraud upon the market artificially inflating the market for ... shares of Idearc." (J.A. at 59.)

To pursue a private right of action under section 10(b) and Rule 10b-5, a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss. *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007).  In doing so, the plaintiff must comply with the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which "imposes two exacting and distinct pleading requirements for securities fraud actions." *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 277 (3d Cir. 2010).  First, a complaint alleging that the defendant is liable by virtue of a material misrepresentation or omission must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-

4(b)(1). Second, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A).

We agree with the District Court that Appellants' second amended complaint fails to state an actionable securities fraud claim under those standards. The pleading does not provide any facts from which one could ascertain whether either JPMC or Verizon, or both, made any actionable misrepresentations or omissions at all.[6] The closest it comes to doing so is its reference to Verizon's 2007 annual statement (which Appellants read to indicate that Verizon felt Idearc might be subject to recapitalization) and Idearc's 2006 prospectus (which allegedly omitted information concerning a tax sharing agreement). However, Appellants' reference to these statements fails to indicate how, if at all, the statements could be interpreted as material misrepresentations or omissions. As a result, the allegations fall far short of the particularized pleading required by the PSLRA. *See* 15 U.S.C. § 78u-4(b)(1). The second amended complaint also contains no allegations from which reliance and economic loss can be established because there is no indication as to how, when, or why Appellants purchased or sold Idearc stock. There is thus no way to ascertain how any misrepresentation or omission impacted Appellants' decisions to

---

[6] Correspondingly, the complaint fails to ascribe any given statement to either defendant particularly. *Cf. Winer Family Trust v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007) ("The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions.").

purchase or sell securities.  Accordingly, the District Court appropriately dismissed Appellants' securities fraud claim.[7]

B.    *Common Law Fraud*

Appellants' common law fraud claim, rooted in the same factual allegations as their securities fraud claim, alleges that the spin-off was a massive fraud perpetrated by Verizon and JPMC to offload Verizon's debt onto Idearc.  "'[T]o establish common law fraud [under Pennsylvania law], a plaintiff must prove:  (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result.'"[8]  *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 225 n.13 (3d Cir. 2008) (quoting *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006)).

---

[7] Unlike Appellants' complaint, which appears to plead a securities fraud claim arising from a material misrepresentation or omission, Appellants' briefing suggests that their basis for relief is instead grounded in the fact that Idearc stock was a false security that should "not have been marketed at all."  (Appellants' Br. at 9.)  However, while the Fifth Circuit has arguably countenanced a "fraud created the market" theory, *see Shores v. Sklar*, 647 F.2d 462, 468-70 (5th Cir. 1981) (concluding the plaintiff could state a claim if he could show that "(1) the defendants knowingly conspired to bring securities onto the market which were not entitled to be marketed, intending to defraud purchasers, (2) [the plaintiff] reasonably relied on the [securities'] availability on the market as an indication of their apparent genuineness, and (3) as a result of the scheme to defraud, [the plaintiff] suffered a loss" (internal footnote omitted)), *overruled on other grounds as recognized in Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 392 (5th Cir. 2007), we have emphatically rejected that theory, *see Malack v. BDO Seidman, LLP*, 617 F.3d 743, 756 (3d Cir. 2010) ("The fraud-created-the-market theory lacks a basis in common sense, probability, or any of the other reasons commonly provided for [it].").

[8] Appellants brought this action in Pennsylvania and assume that their state-law claims are subject to Pennsylvania law.  *See Felder v. Casey*, 487 U.S. 131, 151 (1988) (explaining that a federal court exercising supplemental jurisdiction over a state-law

8

As the elements of the tort and the factual allegations giving rise to the claim demonstrate, Appellants' common law fraud claim is substantially similar to Appellants' securities fraud claim under section 10(b) and Rule 10b-5.[9] Moreover, while not identical to the pleading requirements applicable to federal securities fraud claims, common law fraud claims brought in federal court require the pleader to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). As explained above, Appellants' factual averments of securities fraud are not sufficient to state a claim, and Appellants' common law fraud claim fails for much the same reason. It is simply inadequate to meet the applicable pleading standard. *See GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 214 (3d Cir. 2001) (observing the similarities between federal securities fraud claims and Pennsylvania common law fraud claims, and holding that the plaintiff's "common law fraud claims fail for the same reasons his federal securities claims fail").

C.    *Conversion*

Appellants allege that JPMC converted Appellants' Idearc shares to their own shares by receiving Idearc's shares through the Plan. As best can be gleaned from their

---

claim should apply the forum state's substantive law). Neither side has contested that choice of law, and we accept it for purposes of our analysis.

[9] The count in which Appellants' fraud claim appears is titled "Common Law Fraud and Undue Influence Claims," (J.A. at 62), and Appellants' briefing suggests that Appellants consider undue influence to be a distinct claim for relief. (*See* Appellants' Opening Br. at 24.) However, as the District Court correctly observed, undue influence is generally a defense to a claim. Moreover, the relief Appellants evidently seek – reversing the pre-bankruptcy debt exchange – would inappropriately conflict with the Bankruptcy Court's order approving the Plan insofar as it assigned any claims to a litigation trust for the benefit of Idearc's bankruptcy estate and creditors.

9

pleadings, Appellants believe that JPMC achieved this by exerting illicit influence on the Bankruptcy Court to allow JPMC to become "simultaneously both a secured and an 'unsecured' creditor" in order to receive an equity interest in Idearc under the Plan. (J.A. at 65.) Appellants' conversion claim is thus – as the District Court characterized it – essentially a collateral attack on the final judgment of the Bankruptcy Court, and the District Court correctly dismissed it. *See Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 219 (3d Cir. 1999) (explaining the general rule that a final judgment has res judicata effect and may not be attacked collaterally).

D. *Communications Act*

Appellants allege that Verizon's allegedly fraudulent spin-off transaction violated § 206 of the Communications Act. Section 206 provides a basis for liability where a common carrier injures another by an act or omission that violates the portion of the Communications Act regulating common carriers. 47 U.S.C. § 206. Appellants claim that Verizon must be subject to liability under the Communications Act because the Idearc spin-off was a scheme that enabled Verizon to unlawfully acquire money which was then used to obtain federal licenses for Verizon's network.[10] This theory of liability is a painful stretch. Appellants' dressing up yet another version of their inadequate fraud

_____

[10] Indeed, the only reference Appellants' complaint makes to any specific provision of the Communications Act besides § 206 states that the "debt off-loading spin transactions were necessary, integral and inseparable from the federal licensing and authority granted pursuant to the Federal Telecommunications Act [47 U.S.C. § 214] for building of Verizon's new and expanded systems in the Northeastern United States . . . as without the ridding of the debt, the building could not have occurred." (J.A. at 67.) Appellants further assert in their briefing that "*general* fraud in the conduct of one's communications business can result in loss of license." (Appellants' Opening Br. at 28.)

claim in Communications Act clothing does not make it cognizable. We agree with the District Court that their allegations do not provide a basis for recovery under the Communications Act.

E. *Dismissal With Prejudice*

Ordinarily, a plaintiff must be afforded an opportunity to amend his or her complaint when it is dismissed for failure to state a claim. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). However, a curative amendment need not be afforded where it "would be inequitable or futile." *Id.* The District Court rightly concluded that a curative amendment would be futile in this case. Even after filing two amended complaints and being expressly invited by the District Court to file a third amended complaint, Appellants presented only claims that were well below the governing pleading standards. Under these circumstances, the District Court's determination that a curative amendment would be futile was not an abuse of discretion.[11]

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[11] Nor did the District Court err in denying Appellants' motion for summary judgment in light of the disposition of Appellees' motions to dismiss. Once the District Court determined that Appellants' complaint failed to state legally cognizable claims, Appellants' motion for summary judgment was moot.